**In re Glen Fredric SHORE, Debtor.**

**McCain Foods USA, Inc., Plaintiff,**

**v.**

**Glen Fredric Shore, Defendant.**

**Bankruptcy No. 01–14096.**
**Adversary No. 01–5277.**

United States Bankruptcy Court,
D. Kansas.

Jan. 29, 2004.

Mark J. Lazzo, Wichita, KS, for Debtor.

D. Michael Case, Wichita, KS, trustee.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

ROBERT E. NUGENT, Chief Judge.

### Introduction

This is a dischargeability proceeding under 11 U.S.C. § 523. Plaintiff McCain Foods USA, Inc. ("McCain") moves for partial summary judgment[1] on its second cause of action wherein it alleges that Glen Fredric Shore's ("Shore") debt to it constitutes a willful and malicious injury to McCain within the meaning of 11 U.S.C. § 523(a)(6). Shore's debt arises out of a final state court journal entry of judgment entered against him by the Sedgwick County District Court determining that Shore violated the Kansas Uniform Fraudulent Transfer Act ("UFTA"), specifically KAN. STAT. ANN. 33–204(a)(1) (2000), thereby effectively concluding that Shore acted with "actual intent to hinder, delay or defraud" McCain.[2] McCain asserts that, because of a finding made in the state court proceedings that "Shore acted toward McCain with willful conduct and fraud," this Court must find that Shore intentionally injured McCain and that the UFTA Judgment must be excepted from Shore's discharge under § 523(a)(6) of the Bankruptcy Code. Shore counters that because McCain is a corporation, not a natural person, his debt is only excepted from discharge if Shore intentionally injured McCain's *property*, a conclusion not made by the state court and not supported by the record before it.

### Facts

McCain asserts as its "uncontroverted facts" the UFTA Judgment finding Shore liable to McCain as a fraudulent transferee of some $124,500 and that Shore himself engineered the transfers with the actual intent to hinder, delay and defraud the creditors of Central Processing, Inc. ("Central") and Allen Quality Foods, Inc. ("Allen"), including McCain.[3] Plaintiff relies on the terms of the UFTA Judgment as well as the Kansas Supreme Court's opinion affirming the UFTA Judgment[4] and the state court's order allowing McCain to seek punitive damages under KAN. STAT. ANN. § 60–3702 (2002 Supp.).[5]

Shore complains that, in presenting the statement of uncontroverted facts in this manner, McCain has violated D. Kan. LBR 7056.1 and that this violation is fatal to

---

1. McCain has also alleged that Shore's debt should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) but the (a)(2) claim is not the subject of McCain's instant summary judgment motion.

2. The proceedings in the state court will be referred to as the "State Court Case" and the journal entry of judgment entered there will be referred to as the "UFTA Judgment."

3. *See* KAN. STAT. ANN. § 33–204(b) which enumerates eleven (11) badges of fraud to be considered in determining "actual intent" under § 33–204(a)(1).

4. *McCain Foods, USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 61 P.3d 68 (2002) attached as Ex. 1 to McCain's summary judgment papers.

5. *See* Ex. 3 attached to McCain's summary judgment papers. In Kansas, a party must seek leave of the court to add a claim for punitive damages after the petition is filed, but prior to the final pretrial conference. The trial court must make certain findings regarding the defendant's conduct before allowing such a claim to be pursued. KAN. STAT. ANN. § 60–3703 (2002 Supp.); *Golconda Screw, Inc. v. West Bottoms Ltd.*, 20 Kan.App.2d 1002, 1007–08, 894 P.2d 260 (1995) (holding that punitive damages may be awarded in a fraudulent conveyance action, the predecessor statute to the UFTA, and are designed to punish a wrongdoer for the "malicious, vindictive, or willful and wanton invasion of another's rights.").

McCain's summary judgment motion.[6] While McCain could, and should, have presented its statement of facts in a fashion easier for Shore to respond to (and easier for this Court to process) by enumerating the various factual findings made in the State Court Case and citing with particularity to the record, the UFTA Judgment and the Kansas Supreme Court opinion contain extensive fact findings, the finality and validity of which are not contested by Shore. The fact that the judgment relied upon by McCain is final, having been affirmed by the highest court in Kansas, renders McCain's factual statements uncontroverted. Thus, McCain has substantially complied with D. Kan. LBR 7065.1, although not in a manner encouraged by this Court in the future.

Drawing from the content of the UFTA Judgment and the Kansas Supreme Court opinion, the background facts may be summarized as follows.[7] Shore was an officer and director of Central and Allen. Allen's role was essentially as a broker for food contracts. Allen obtained a contract from the United States Department of Agriculture (USDA) to provide potato wedges to the Government. The potatoes were to be procured from McCain. McCain supplied the potatoes, but Allen paid slowly at best and McCain pressed for its money.

As this Court understands the findings made in the State Court Case, Allen would secure contracts and act as a collector, passing the government contract proceeds and payments on to McCain. Hence, according to the findings in the State Court Case, the USDA paid Allen for the potatoes, but Allen never fully paid McCain.

From July, 1998 through July, 1999, Shore was an officer and director of both Allen and Central. Allen and Central had common officers and directors and operated from the same premises at 1200 Moseley Street in Wichita. Central made processed meat that Allen provided under contracts to the USDA. Central ceased its production operations in February 1999. Allen stopped operating entirely a short time later. Not only did Shore serve in a managerial capacity, he also provided financing to Central and Allen. Shore guaranteed Allen's and Central's bank loans[8] and made direct loans to Allen.

After Allen failed to pay McCain on a timely basis, and in response to McCain's demands, someone at Allen caused a $125,000 check to be issued to McCain on April 15, 1999. Shortly thereafter, Shore, acting on behalf of Allen, stopped payment of the check. On April 19, Shore transferred $120,000 from Allen to Central and, thereafter, in a series of transactions, caused himself to be repaid a $45,000 loan he had made to Allen and caused Allen and Central to pay Intrust a total of $79,495 on loans that he had guaranteed. Shore took this series of actions even after being told by Percy King, another director, that the

---

**6.** D. Kan. LBR 7056.1(a) requires, in part, that "the memorandum or brief in support of a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists." The facts are to be "numbered and refer with particularity" to the record relied upon for their support.

**7.** The state court's findings of fact are set forth at length with approval in the Kansas

Supreme Court's opinion. *See* 275 Kan. at 4–9, 61 P.3d 68. It is this recitation of the facts, along with most of Shore's statement of additional uncontroverted facts on which this Court bases this Order.

**8.** In particular, Shore guaranteed Intrust Bank's loans to Allen and Central. Other than Shore's guaranty, Intrust's loans were unsecured.

$125,000 check was legitimately payable to McCain.

McCain sued Shore and Central in state court for violation of the UFTA. The state court held, and the Kansas Supreme Court affirmed, that Shore's transfers, whether direct or indirect, were transfers made with actual intent to hinder, delay or defraud creditors and expressly avoidable under Kan. Stat. Ann. § 33–204(a)(1) (2000). The state court also permitted McCain to seek punitive damages under Kan. Stat. Ann. § 60–3702(b) (1994), specifically finding that Shore "acted toward McCain with willful conduct and fraud." [9] It is this specific finding that McCain asserts provides the basis for determining that Shore willfully and maliciously injured McCain under 11 U.S.C. § 523(a)(6) and renders the UFTA Judgment nondischargeable.

McCain had also pled in the State Court Case a claim to avoid these transfers as fraudulent under Kan. Stat. Ann. § 33–205(b) (2000), as transfers to insiders on account of antecedent debt while the transferor was insolvent and where the transferee knew or should have known of the insolvency. McCain was granted partial summary judgment on the § 33–205(b) claim and that order is part of the state court record upon which McCain relies for the purpose of the current summary judgment motion. [10]

In its UFTA Judgment following trial on the § 33–204(a)(1) claim, the state court made extensive findings concerning the various badges of fraud demonstrated by McCain to prove Shore's actual intent to "hinder, delay or defraud" and entered judgment for McCain against Shore in the amount of $124,495 plus punitive damages of $20,000. [11] The court specifically found that Shore issued the stop payment order on the check sent by Allen to McCain notwithstanding having been specifically told that McCain's claim was valid. The state court characterized this as conduct "consistent with an intent to defraud." [12] The state court also concluded that Shore was among those in control of the company when the $120,000 wire transfer from Allen to Central was made and that Shore, in effect, made the transfer himself. [13] Finally, in entering judgment for punitive damages, the state court found that "Shore acted toward McCain with willful conduct and fraud . . ." [14]

In response to McCain's statement of facts, Shore asserts five additional uncontroverted material facts, two of which McCain controverts as follows. [15] Shore asserts that the state court did not find that he had caused an injury to McCain. McCain responds that, in authorizing the punitive damages claim under Kan. Stat. Ann. § 60–3702(b), the state court made a specific finding that Shore had acted toward McCain "with willful conduct and

---

**9.** *See* Journal Entry of Judgment, p. 6, attached to McCain's summary judgment motion as Ex. 4.

**10.** *See* Ex. 2 attached to McCain's summary judgment motion. This order is useful to the Court because of its extensive factual findings upon which the Kansas Supreme Court relied in affirming the Kan Stat. Ann § 33–204(a)(1) claim that McCain asserts should be excepted from Shore's discharge. *See* 275 Kan. at 4–7, 61 P.3d 68.

**11.** 275 Kan. at 7–9, 61 P.3d 68. The judgment amount of $124,495 equals the total amount of the transfers to Shore or for his benefit.

**12.** Ex. 4, Journal Entry, p. 3.

**13.** Ex. 4, Journal Entry, p. 4.

**14.** Ex. 4, Journal Entry, p. 6.

**15.** Dkt. 33, pp. 3–4. *See* D. Kan. Rule 56.1(b)(2).

fraud" and granted McCain a $20,000 punitive damage award. For the same reason, McCain contests Shore's fifth uncontroverted fact which states that McCain never alleged and the court never found that Shore took any action with actual intent to harm McCain. This Court concludes that the state court found that McCain was damaged as a result of Shore's willful acts done with fraudulent intent, based upon the presence of six badges of fraud. Thus, these facts are properly controverted.

The remaining three uncontested facts asserted by Shore are: (1) that the funds paid from Allen's and Central's accounts on the Intrust note belonged to the companies and not to Shore; (2) that these funds were never McCain's property; and (3) that there was no finding in the State Court Case that Shore caused an injury to McCain's property. These facts are uncontroverted but not material to a determination of McCain's § 523(a)(6) claim here because McCain does not assert an injury to its property.

### Summary Judgment Standards

In deciding this summary judgment motion, the Court must determine whether there are any genuine issues of material fact and whether the movant McCain is entitled to judgment as a matter of law on its § 523(a)(6) claim. The Court must view the record and draw all reasonable inferences therefrom most favorably to the non-moving party Shore.[16] An issue of fact is "genuine" if there is sufficient evidence from which a rational trier of fact could resolve the issue either way and an issue of fact is "material" if under the substantive law it is essential to the proper

disposition of the claim.[17] McCain, as the movant, bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact.[18] If there are no genuine issues of material fact, the Court must then correctly apply the substantive law.[19]

As the Court views the posture in which this case is presented (*i.e.* having a final UFTA Judgment with detailed findings of fact and conclusions of law, affirmed by the Kansas Supreme Court), its task is to determine whether those state court findings and conclusions of law support a § 523(a)(6) discharge exception as a matter of law. While McCain and Shore disagree on the meaning and effect of the state court's findings of fact, the findings of fact in and of themselves are not disputed and do not create any genuine issues of material fact. What must be determined is whether those findings preclude relitigation of the issues inherent in a discharge exception under § 523(a)(6) such that McCain is entitled to a § 523(a)(6) judgment as a matter of law.

### 11 U.S.C. § 523(a)(6) "Willful and Malicious Injury"

While it is tempting to simply repeat the state court's findings of "willful conduct and fraud" with respect to the punitive damage claim, this Court must resist the temptation and, instead, carefully consider the elements of a § 523(a)(6) discharge exception and the extent to which the established facts in the State Court Case support those elements. Moreover, this Court must deal with Shore's contention that only physical harm will support a § 523(a)(6) claim and that a corporation,

---

**16.** *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998).

**17.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**18.** *Adler, supra* at 670–71.

**19.** *Id.* at 670.

being an artificial person, can never assert such a claim unless its *property* has been injured.

■ Section 523(a)(6) recites that debts "for willful and malicious injury by the debtor to another entity *or* to the property of another entity" are excepted from the § 523 discharge. As explained by the United States Supreme Court in *Kawaauhau v. Geiger*,[20] the standard of conduct necessary for a willful injury requires proof of an intentional act by the debtor with actual intent to cause injury to an entity or an entity's property.[21] When a creditor can demonstrate by a preponderance of the evidence that (1) the debtor committed a willful act with intent to harm the creditor and (2) that actual harm results, the creditor's debt will be excepted from discharge.[22] *Geiger* holds that the specific injury must have been intended and not merely be the consequence of a willful act.[23] This Court has previously stated that § 523(a)(6) generally relates to intentional tort actions.[24]

■ Here, in finding that Shore's "conduct [was] consistent with an intent to defraud," the state court essentially determined that Shore intended to harm McCain. The state court's specific finding that Shore *knew* from Percy King that McCain's claim was good and that the $125,000 check should have been allowed to clear supports this conclusion as does the court's conclusion that Shore himself was responsible for the wire transfer of funds between the companies which placed the $120,000 out of reach of McCain as a creditor. Shore's subsequent application of some of these funds to his own debt or to debts guarantied by him further suggests that Shore knew and intended that his actions, while beneficial to himself, would be harmful to McCain. All of these findings are incident to and consistent with the state court's determination that numerous badges of fraud as listed in KAN. STAT. ANN. § 33–204(b) were present when these transfers occurred.

### Fraudulent Transfers Under KAN. STAT. ANN. § 33–204

■ Section 4 of the UFTA is enacted in Kansas as KAN. STAT. ANN. § 33–204. Subsection (a)(1) provides that a transfer is fraudulent as to present and future creditors of the transferor,[25] if the transfer is made with actual intent to hinder, delay or defraud the creditors of the transferor. To decide whether a transfer has been made with such actual intent (which is rarely subject to proof by direct evidence), courts are directed to look for the occur-

20. 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

21. Nondischargeability requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. 118 S.Ct. at 977.

22. The Court observes that this burden of proof is less stringent than the "clear and convincing evidence" standard required for imposition of punitive damages. *See* KAN STAT. ANN. § 60–3702(c) providing that "plaintiff shall have the burden of proving, by clear and convincing evidence ... that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice."

23. 118 S.Ct. at 977.

24. *Farmers State Bank v. Diel (In re Diel)*, 277 B.R. 778, 783 (Bankr.D.Kan.2002) (holding that debtor's willful sale of bank's collateral [*i.e.* conversion] maliciously injured bank).

25. Within the rubric of the UFTA, the transferor is often referred to as the "debtor" (in this case, Allen). KAN. STAT ANN. § 33–201(f). To avoid confusion, the Court refers to McCain's debtor Allen as the transferor and Shore, the transferee, as the "debtor."

rence of one or more attributes of fraudulent transfers, referred to colloquially as "badges of fraud." [26] Subsection (b) lists eleven, nonexclusive statutory badges of fraud.

Here, the state court found that six of the badges were shown by clear and convincing evidence. It found that the transfers were: (i) to an insider; [27] (ii) made under concealment; [28] (iii) made after Allen had been sued or was threatened with collection action; [29] (iv) made of all or substantially all of the assets of Central and Allen; [30] (v) Central and Allen concealed or destroyed assets; [31] and (vi) made while Central and Allen were insolvent. [32] The state court concluded that the presence of these six badges established willful conduct taken with the intent to hinder, delay or defraud McCain:

> Inasmuch as McCain has established six of the eleven badges of fraud set forth in K.S.A. 33–204(b) and two of the five badges that have not been established are inapplicable in the context of this case, a presumption arises that Shore defrauded McCain.
>
> ... Here McCain has established enough of the badges of fraud to raise a presumption or inference of fraud. [33]

### Collateral Estoppel

 McCain argues that, under the doctrine of collateral estoppel, this Court must find as a matter of law that McCain was damaged with willful and malicious intent and that the UFTA Judgment against Shore should be excepted from discharge. [34] The Tenth Circuit Bankruptcy Appellate Panel has previously stated that a federal court reviewing the preclusive effect of a state court judgment must look to the preclusion law of the state in which the judgment was entered. [35] While the bankruptcy court retains jurisdiction to determine the applicability of the discharge exceptions, it must accord full faith and credit to those matters already determined by the state court judgment, thus precluding the relitigation of settled facts. [36]

 Under Kansas law, for collateral estoppel to apply the following elements must be established: (1) the issue previously decided in the State Court Case is identical with the issue presented in this adversary proceeding; (2) the State Court Case has been finally adjudicated on the merits; (3) Shore, as the party against whom the doctrine is invoked, was a party in the State Court Case; and (4) Shore

---

26. *See Koch Engineering Co. v. Faulconer*, 239 Kan. 101, 716 P.2d 180 (1986), a case arising under the former fraudulent conveyance statute. "[B]adges of fraud are suspicious circumstances ... Badges of fraud are circumstances frequently attending conveyances and transfers intending to hinder, delay or defraud creditors. They are red flags, and when they are unexplained in the evidence, they may warrant an inference of fraud." *Id.* at 107, 716 P.2d 180.

27. Section 33–204(b)(1).

28. Section 33–204(b)(3).

29. Section 33–204(b)(4).

30. Section 33–204(b)(5).

31. Section 33–204(b)(7).

32. Section 33–204(b)(9).

33. *See* Ex. 4, p. 6.

34. The doctrine of collateral estoppel may be applied in bankruptcy dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

35. *In re Audley*, 275 B.R. 383 at 387 (10th Cir. BAP 2002).

36. *Id.*

had a full and fair opportunity to litigate the issue in the prior action.[37] Collateral estoppel prevents a second litigation of the same issues between the same parties even in connection with a different claim.[38]

While Shore agrees that the elements of collateral estoppel are as set out above, he disputes their application here. Shore challenges two of the elements: (1) that the issue in this adversary proceeding is not identical to that in dispute and determined in the UFTA Judgment by the State Court Case; and (2) that Shore has been denied a full and fair opportunity to litigate the issue of his intent to injure McCain.

 In support of his first argument, Shore argues that the state court never considered nor determined that Shore injured McCain's property. Shore argues that § 523(a)(6) provides relief only against those bankruptcy debtors who have physically injured a human being and that corporations, as artificial persons, cannot be personally injured. With this as a predicate, Shore asserts that McCain nev-

er asserted or had a property interest in any of the moneys transferred and, as such, its property interest could not have been maliciously injured. Even a bare consideration of the statutory language reveals that Shore's predicate is faulty.

Section 523(a)(6)(a) speaks in terms of willful and malicious injury to an "entity" *or* to the property of an entity. An "entity" is defined in 11 U.S.C. § 101(15) to include "person." A "person" is defined in 11 U.S.C. § 101(41) as including individuals, partnerships, and corporations. Thus, within the context of the Bankruptcy Code, a corporation is a person who may be injured. One treatise states that § 523(a)(6) injuries are not confined to bodily harm and that "injury to intangible personal or property rights is sufficient."[39] While the United States Court of Appeals for the Tenth Circuit is silent on the point, the majority of courts considering this issue hold that § 523(a)(6) injuries are not limited to bodily injuries.[40] Indeed, the Supreme Court has suggested in dicta that fraud judgments may appropriately be excepted from discharge under § 523(a)(6).[41]

37. *Kayes v. Klippel (In re Klippel)*, 183 B.R. 252, 258 (Bankr.D.Kan.1995). *See also State v. Kelly* 262 Kan. 755, Syl. ¶ 6, 942 P.2d 579 (1997) ("Under the rule of collateral estoppel, when an issue of ultimate fact has once been determined by a valid and final judgment that issue cannot again be litigated between the same parties in any future lawsuit.").

38. *See Cain v. Kansas Corp. Com'n*, 9 Kan. App.2d 100, 673 P.2d 451 (1983), *rev. denied* 235 Kan. 1041 (1984), quoting *Goetz v. Board of Trustees*, 203 Kan. 340, Syl. ¶ 6, 454 P.2d 481 (1969).

39. Lawrence A. King, et al., 4 COLLIER ON BANKRUPTCY, ¶ 523.12[2] (15th ed. rev.2003).

40. *See Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 858 (1st Cir.1997) (discharge exceptions § 523(a)(2) and § 523(a)(6) are not mutually exclusive; text of § 523(a)(6) does not preclude invocation by aggrieved party whose injury sounds in fraud, *citing In re*

*Dorsey*, 162 B.R. 150, 155–56 (Bankr.N.D.Ill. 1993)); *In re Anderson*, 30 B.R. 229, 232 (Bankr.S.D.Fla.1983) (civil penalty judgment for violation of labor statute was excepted from discharge; economic injury is sufficient under § 523(a)(6)); *Mazurczyk v. O'Neil*, 268 B.R. 1, 5 (Bankr.D.Mass.2001) (civil damage judgment for illegal tape recording of communications; injury under § 523(a)(6) not limited to bodily injury); *In re Rosenberger*, 208 B.R. 445, 447 (Bankr.C.D.Ill.1997) (debtor's felony conviction for having sexual relations with 17-year old student; injury under § 523(a)(6) is not limited to bodily injury or physical abuse); *In re McGuffey*, 145 B.R. 582, 592 (Bankr.N.D.Ill.1992) (discrimination judgment for actual and punitive damages; § 523(a)(6) imposes no requirement of bodily injury or physical abuse).

41. *See Grogan v. Garner*, 498 U.S. 279, 282 n. 2, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("Arguably fraud judgments in cases in which

Shore relies on the case *Quarre' v. Saylor (In re Saylor)*,[42] where the Ninth Circuit Court of Appeals ("Ninth Circuit") affirmed the Ninth Circuit Bankruptcy Appellate Panel's ("BAP") holding that unless the creditor has some actual right to possess the property fraudulently transferred, the avoiding of a fraudulent transfer, standing alone, does not dictate that the bankruptcy court find the existence of a willful and malicious injury to the creditor's property. In *Saylor*, the creditor asserting a § 523(a)(6) discharge exception had obtained a judgment in state court for breach of contract against a company controlled by the debtors in bankruptcy. During the pendency of the state court contract case against the company and one of the debtors, the debtors transferred some real estate owned by them to a third party for little or no consideration. When the creditor proceeded against the Saylors individually under the California UFTA, they filed their chapter 7. The creditor then took exception to their discharge, asserting that the transfers were willful and malicious acts that had damaged his property interests, namely the creditor's fraudulent transfer rights. When the Saylors failed to respond to his adversary complaint, the creditor sought a default judgment. The bankruptcy court required the creditor to make an evidentiary record in support of his claim and, after hearing his evidence, denied judgment, finding that the creditor had not proven the elements of § 523(a)(6).[43] The BAP affirmed and the Ninth Circuit, relying with approval on the BAP's opinion, affirmed as well.

The BAP rejected the creditor's unsupported claim that his rights under the California UFTA supported his discharge exception claim:

Rather, [creditor] argues that, since the California Uniform Fraudulent Transfer Act gives him substantial remedies against the property, he has an interest in that property. Even if that were so, it does not follow that Quarre has a right to payment from the Saylors resulting from their transfer, or a property interest damaged by the transfer. Absent either a right to payment or a damaged property interest, there is no debt which could be nondischargeable, and the complaint does not state a claim for relief.[44]

At the same time, the BAP expressly rejected the creditor's claim that his right to avoid the fraudulent transfer was, in and of itself, a property right that had been damaged, thereby further undermining his § 523(a)(6) claim.[45] Simply put, the creditor in *Saylor* failed to demonstrate what, if any state law property interest of his was damaged by the debtors' willful acts.

While Shore may not have injured McCain's property, *Saylor* addresses a very different set of facts. The creditor in *Saylor* did not have a UFTA judgment against the debtor that it was attempting to except from discharge. The creditor only had a judgment for breach of contract. Thus, the creditor did not have prior findings that the debtor had engaged in fraudulent conduct. In our case, McCain holds a UFTA judgment against Shore, already determining that Shore act-

the defendant did not obtain money, property, or services from the plaintiffs and those judgments that include punitive damages awards are more appropriately governed by § 523(a)(6).")

**42.** 178 B.R. 209 (9th Cir. BAP 1995), *aff'd* 108 F.3d 219 (9th Cir.1997).

**43.** 108 F.3d at 220.

**44.** 178 B.R. at 215.

**45.** *Id.*

ed with actual intent to hinder, delay or defraud McCain.

In addition, the debtor in *Saylor* was not the transferee of the property transferred. Rather, the debtor was the transferor of the property. The creditor asserted an actual property interest in the transferred assets by virtue of state law. In our case, Shore, as the recipient, directly or indirectly, of the transferred funds, was the transferee. Here, Shore was not McCain's debtor until the state court entered the UFTA Judgment. McCain does not assert a property interest in the funds transferred. Rather it asserts that it was the victim of intentional fraud which was remedied by the UFTA Judgment of damages. *Saylor* is of no help to Shore here.

The State Court Case and this adversary proceeding share common issues, the most critical being whether Shore acted intentionally with knowledge his actions would harm McCain. The state court found that he did. This satisfies the "identical issue" element of collateral estoppel.

Moreover, the proceedings in the State Court Case viewed as a whole satisfy the "full and fair opportunity" element. At issue from the beginning of the State Court Case was whether Shore had caused the transfers of the funds with intent to hinder, delay, and defraud McCain, one of Allen's creditors. The matter was tried to the court after significant motion practice. The state court issued a reasoned and detailed order entering judgment, and that judgment was affirmed on appeal by the Kansas Supreme Court. Shore was represented at all times and the issues that drive this proceeding were present and in controversy in the State Court Case. Shore had every opportunity and in fact did contest them.[46]

### Conclusion

In summary, by the operation of collateral estoppel, this Court must find as a matter of law that the state court's determination that Shore's actions were done with actual intent to defraud McCain and that McCain was injured, dictate a conclusion that Shore did willfully and maliciously injure McCain and that Shore's debt (the UFTA Judgment) should be excepted from discharge under § 523(a)(6). Shore's fraud is apparent from the state court's findings as is his apparent knowledge that his actions would injure McCain's economic interests. Kansas law allows the imposition of punitive damages in this situation under Kan. Stat. Ann. § 60–3702 and Kansas case law makes clear that fraudulent conveyance or transfer actions can, in appropriate circumstances, support the award of such damages.[47]

There being no factual controversy in this adversary proceeding that precludes summary judgment, McCain is entitled to judgment as a matter of law on its § 523(a)(6) claim. The Court GRANTS the motion for partial summary judgment. McCain's UFTA Judgment against Shore in the amount of $124,950 actual damages, $20,000 punitive damages, and $66.50 in costs is excepted from Shore's discharge pursuant to 11 U.S.C. § 523(a)(6).[48] A

---

46. Shore did not lose in the State Court Case because he did not have the opportunity to contest the issues, but because as the Kansas Supreme Court concluded, "[s]imply put, the trier of fact did not believe Shore's story." 275 Kan. at 19, 61 P.3d 68.

47. *See* n. 5, *supra*.

48. Although this Court's research did not uncover any Tenth Circuit authority on the issue, the weight of authority holds that punitive damages are excepted from discharge where they are based on the same underlying conduct that warrants the nondischargeability of actual damages. *See Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 644–

separate Judgment on Decision will issue this day.

## JUDGMENT ON DECISION

Plaintiff McCain Foods USA, Inc. ("McCain") moves for partial summary judgment on its claim that Glen Fredric Shore's ("Shore") debt to it constitutes a willful and malicious injury to McCain within the meaning of 11 U.S.C. § 523(a)(6). McCain obtained a state court judgment against Shore for violation of the Kansas Uniform Fraudulent Transfer Act, KAN. STAT. ANN. 33–204(a)(1)(2000), thereby effectively determining that Shore acted with "actual intent to hinder, delay or defraud" McCain.[1] It is this judgment debt that McCain seeks to except from Shore's discharge.

By the operation of collateral estoppel, this Court concludes as a matter of law that Shore's actions were done with actual intent to defraud McCain and that McCain was injured, thereby dictating the conclusion that Shore did willfully and maliciously injure McCain's economic interests. Shore's judgment debt to McCain should be excepted from discharge under § 523(a)(6).

The Court GRANTS the motion for partial summary judgment. McCain's judgment against Shore in the amount of $124,950 actual damages, $20,000 punitive damages, and $66.50 in costs is excepted from Shore's discharge pursuant to 11 U.S.C. § 523(a)(6).

45 (8th Cir.1999); *Abbo v. Rossi, McCreery & Assocs., Inc. (In re Abbo)*, 168 F.3d 930, 931–32 (6th Cir.1999); *Hagan v. McNallen (In re McNallen)*, 62 F.3d 619, 626–27 (4th Cir.1995); *Moraes v. Adams (In re Adams)*, 761 F.2d 1422, 1428 (9th Cir.1985).

1. See *McCain Foods, USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 61 P.3d 68 (2002).