**In re Glen Fredric SHORE, Debtor.**

**McCain Foods USA Inc.,
Plaintiff—Appellee,**

v.

**Glen Fredric Shore, Defendant—
Appellant.**

**BAP No. KS–04–032.
Bankruptcy No. 01–14096–7.
Adversary No. 01–05277.**

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

Dec. 1, 2004.

Submitted on the briefs: *

Mark J. Lazzo of Mark J. Lazzo, P.C., Wichita, Kansas, for Defendant—Appellant.

W. Thomas Gilman of Redmond & Nazar, LLP, Wichita, Kansas, for Plaintiff—Appellee.

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

Before CORNISH, MICHAEL, and THURMAN, Bankruptcy Judges.

## OPINION

CORNISH, Bankruptcy Judge.

Glen Fredric Shore ("Shore") appeals a judgment of the United States Bankruptcy Court for the District of Kansas that applied the collateral estoppel doctrine to a state court judgment and granted partial summary judgment on a dischargeability complaint under 11 U.S.C. § 523(a)(6)[1] in favor of McCain Foods USA, Inc. ("McCain"). Shore contends that the collateral estoppel doctrine was wrongfully applied because in the state court proceeding, he did not have a full and fair opportunity to litigate an essential element of the dischargeability complaint. Alternatively, Shore argues that the bankruptcy court erred when it applied the collateral estoppel doctrine because there was no identity of issues between the state court judgment and the nondischargeability complaint.

For the reasons stated below, we AFFIRM.

## I. *BACKGROUND*

Shore was an officer and a director of Allen Quality Foods, Inc. ("Allen") and Central Processing, Inc. ("Central"). Allen was a broker for food contracts, securing both contracts to supply specific food items and contracts with providers. Central processed meat that Allen then provided under contract. Shore provided direct loans to Allen and guaranteed both Allen's and Central's bank loans. Allen and Central had commonality of officers and directors and operated from the same premises.

In January 1999, Allen obtained a contract from the United States Department of Agriculture to provide potato wedges to the government. Allen contracted with McCain to supply the potatoes. Allen then failed to timely pay McCain. Central ceased production operations in February 1999, and Allen stopped operating a short time later.

On April 15, 1999, an employee of Allen caused a $125,000 check to be issued to McCain. Shore, acting on behalf of Allen, stopped payment on the check although another director told Shore that the $125,000 check was legitimately payable to McCain. Subsequently, on April 19, 1999, Shore transferred $120,000 from Allen to Central. From those monies Intrust Bank was repaid $79,495.00 on a loan Shore had guaranteed, and Shore was then paid $45,000 for a loan he had made to Central.

Thereafter, McCain brought suit against Shore and Central in Kansas state court containing the following two claims: 1) the transfers from Allen to Central and Central to Intrust and Shore were fraudulent under Kan. Stat. Ann. § 33–205(b) (2000) as transfers to insiders on account of antecedent debt while the transferor was insolvent and where the transferee knew or should have known of the insolvency;[2] and 2) the transfers violated the Kansas Uniform Fraudulent Transfers Act, Kan. Stat. Ann. § 33–204(a)(1) (2000). McCain was granted summary judgment on its § 33–205(b) claim. The UFTA claim went to trial. At trial the state court made exten-

---

1. Unless otherwise noted, all future statutory references are to Title 11 of the United States Code.

2. This statute provides in pertinent part:
 (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.
 Kan. Stat. Ann. § 33–205(b) (2000).

sive findings and conclusions holding that Shore's transfers, whether direct or indirect, were avoidable as transfers made with actual intent to hinder, delay or defraud creditors. The state court also found that Shore "acted toward McCain with willful conduct and fraud" and thereafter allowed McCain to amend its claim to seek punitive damages under Kan. Stat. Ann. § 60–3702(b). Ultimately, the state court entered judgment for McCain against Shore in the amount of $124,495 plus punitive damages of $20,000. Shore appealed the judgment to the Kansas Supreme Court. In a thorough and well-reasoned opinion, the Kansas Supreme Court affirmed the state court. *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 61 P.3d 68 (2002).

On August 24, 2001, Shore filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On October 11, 2001, McCain filed a "Complaint to Determine Dischargeability of Debt," alleging that its debt was nondischargeable under §§ 523(a)(6) or 523(a)(2)(A). Subsequently, on April 9, 2003, McCain filed a Motion for Summary Judgment solely on the § 523(a)(6) claim. In its Motion, McCain argued that the UFTA judgment established all the elements of its § 523(a)(6) claim. The bankruptcy court entered an Order Granting the Summary Judgment on January 29, 2004.[3]

On March 9, 2004, the bankruptcy court dismissed the remaining claim under § 523(a)(2)(A) as moot, declaring that the judgment was now final. This appeal is a timely appeal from a final order because following the partial summary judgment the bankruptcy court certified a final order in accordance with Federal Rule of Civil Procedure 54(b). The parties have consented to this Court's jurisdiction because they have not elected to have the appeal heard by the United States District Court for the District of Kansas. 28 U.S.C. § 158(b)-(c); Fed. R. Bankr.P. 8001(e).

## II. *DISCUSSION*

Summary judgment is provided for through Federal Rule of Bankruptcy Procedure 7056,[4] which adopts the Federal Rule of Civil Procedure 56 ("Rule 56"). As explained in Rule 56(c), summary judgment is appropriate when after an examination of the record, the court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of establishing summary judgment is on the moving party. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir.1995). We review a bankruptcy court's grant of summary judgment *de novo*. *Spears v. St. Paul Ins. Co. (In re Ben Kennedy & Assocs., Inc.)*, 40 F.3d 318, 319 (10th Cir. 1994). When applying this standard, we review the factual record in the light most favorable to the nonmoving party to determine if there are genuine issues of material fact and to discern if the bankruptcy court correctly applied the relevant substantive law. *Jenkins v. Wood*, 81 F.3d 988, 991 (10th Cir.1996).

In this case the bankruptcy court granted summary judgment in favor of McCain, finding its claim nondischargeable under § 523(a)(6). Specifically the bankruptcy court held that when the state court found Shore liable to McCain under the UFTA and assessed punitive damages for that violation, those findings established all the elements of § 523(a)(6), and as a matter of

---

3. *McCain Foods USA, Inc. v. Shore (In re Shore)*, 305 B.R. 559 (Bankr.D.Kan.2004).

4. Rule 7056 provides: "Rule 56 F.R. Civ. P. applies in adversary proceedings." Fed. R. Bankr.P. 7056.

law, the debt was nondischargeable. *Shore,* 305 B.R. at 570.

■ Collateral estoppel applies in bankruptcy court actions to determine the dischargeability of a debt. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Under collateral estoppel, 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Sil–Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1520 (10th Cir.1990) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). While a bankruptcy court ultimately determines whether a debt is dischargeable under § 523, under the collateral estoppel doctrine, a state court judgment may preclude the relitigation of settled facts. *See Klemens v. Wallace (In re Wallace),* 840 F.2d 762, 764–65 (10th Cir.1988).

■ When a federal court applies the collateral estoppel doctrine to a state court judgment, it must look to the preclusion law of the state where the judgment was rendered. *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (holding that in cases exclusively within federal jurisdiction, state law determines the preclusive effect of a prior state court judgment unless an exception to the Full Faith and Credit Statute applies); *see also Phelps v. Hamilton,* 122 F.3d 1309, 1318 (10th Cir. 1997); *State of Mo. ex rel. Nixon v. Audley (In re Audley),* 275 B.R. 383, 387 (10th Cir. BAP 2002).

■ Because the state court proceedings occurred in Kansas, the Kansas collateral estoppel doctrine applies. Kansas courts apply collateral estoppel when the following elements are met:

1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue upon ultimate facts as disclosed by the pleadings and the judgment,

2) the parties must be the same or in privity, and

3) the issue litigated must have been determined and necessary to the judgment.

*Vanover v. Cook,* 260 F.3d 1182, 1187 (10th Cir.2001) (quoting *Jackson Trak Group, Inc. ex rel. Jackson Jordan, Inc. v. Mid States Port Auth.,* 242 Kan. 683, 751 P.2d 122, 128 (1988)). Shore argues that the bankruptcy court erred when it applied the collateral estoppel doctrine, alleging that the requirements of element three were not met because there was no identity of issues between the state court judgment and the bankruptcy court proceedings.

In state court Shore was found liable under the Kansas UFTA. The UFTA provides in pertinent part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay or defraud any creditor of the debtor
. . . .

Kan. Stat. Ann. § 33–204(a)(1) (2000). The state court found that Shore's liability under the UFTA was established by clear and convincing evidence[5] of the presence of six of the eleven badges of fraud delin-

---

**5.** Pursuant to Kan. Stat. Ann. § 60–3702(c), fraud may only be established upon clear and convincing evidence.

eated in § 33–204(b).[6] Based on its finding that Shore acted toward McCain with "willful conduct and fraud" the state court awarded punitive damages for McCain against Shore.

 The bankruptcy court found that it was estopped by the UFTA judgment from reexamining the factual issues in McCain's § 523(a)(6) nondischargeability complaint. Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" will not be discharged. 11 U.S.C. § 523(a)(6). The Supreme Court has explained that this statute refers only to "acts done with the actual intent to cause injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Nondischargeability under § 523(a)(6) requires proof of two elements-that the injury is both willful and malicious. *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir.2004) (holding that there must be proof of both a "willful act" and "malicious injury" to establish nondischargeability under § 523(a)(6)); *see also Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley)*, 235 B.R. 651, 655 (10th Cir. BAP 1999) (collecting opinions interpreting § 523(a)(6)). A "willful act" is one in which the debtor must " 'desire . . . [to cause] the consequences of his act or . . . believe [that] the consequences are substantially certain to result from it.' " *Moore*, 357 F.3d at 1129 (quoting *Longley*, 235 B.R. at 657). A malicious injury oc-

curs when there is proof that the debtor either intended the resulting injury or intentionally took action that was substantially certain to cause the injury. *Id.* The test for this element is a subjective one: the court must determine what the debtor knew or intended with respect to the consequences of his actions. *Id.* The creditor bears the burden of establishing nondischargeability by a preponderance of the evidence. *Holaday v. Seay (In re Seay)*, 215 B.R. 780, 785 (10th Cir. BAP 1997).

In this appeal, Shore presents two arguments: first, he argues that he did not have a full and fair opportunity to litigate the issue of his intent because in the state court proceeding he could not present defenses relevant to a § 523(a)(6) claim; second, he contends that there was no identity of issues between the state court proceeding and the bankruptcy court proceeding because the state court did not establish either the malicious injury element or that McCain had a property interest that was injured as required under § 523(a)(6).[7] We will address each argument in turn.

 Before a federal court examines the state law rules of preclusion, it must first determine whether the party who opposes collateral estoppel had a full and fair opportunity to litigate the issue in the prior action. *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), *Cobb v. Lewis (In re Lewis)*, 271

---

**6.** The state court found the following six badges of fraud with respect to the transfers:
1. The transfers were made to an insider
2. Under concealment;
3. After Allen had been sued or was threatened with collection action
4. Including all or substantially all of the assets of Central and Allen
5. Central and Allen concealed or destroyed assets
6. While Central or Allen were insolvent.

*See Shore*, 305 B.R. at 567. Kan. Stat. Ann. § 33–204(b)(1), (3), (4), (5), (7), (9).

**7.** McCain argues that these arguments should not be considered here as they are new arguments not raised below. We disagree. In the bankruptcy court and in the appeal before us, Shore argues that he did not have a full and fair opportunity to litigate and that there was no identity of issues between the two proceedings.

B.R. 877, 884 (10th Cir. BAP 2002). Whether a party had a full and fair opportunity to litigate in a proceeding that may later have collateral estoppel effect is examined by questioning "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *Sil–Flo,* 917 F.2d at 1521. Shore argues that he was denied a full and fair opportunity to litigate because he was not given the chance to present relevant defenses, including evidence that he was merely preferring one creditor over another and in so doing did not have the specific intent to harm McCain. This argument fails because whether Shore had the specific intent to harm was an element in the state court trial that was fully litigated.

In proving its claim under the UFTA, McCain produced clear and convincing evidence that Shore made the transfers with the "actual intent to hinder, delay or defraud." In establishing liability for punitive damages, McCain had to establish intent to do wrong or cause injury.[8] Both of these elements were established after a contested trial. Any justification defenses to the issue of specific intent would have potentially negated the actual intent element for the UFTA claim and the specific intent element of the punitive damages claim. Because intent was a crucial element with respect to both claims, Shore had the incentive to fully litigate this issue.

■ Shore argues next that there was no identity of issues between the actual intent element of the state court UFTA claim and malicious injury element of § 523(a)(6) because the former does not require proof of an absence of just cause

or excuse. Initially, we observe that the phrasing "without just cause or excuse" is not found in the *Geiger* test but is found in the Supreme Court case *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). In *Tinker* the Supreme Court discussed the concept of legal malice as it applies to the discharge exception for wilful and malicious injury under § 17(a) of the Bankruptcy Act of 1898. Under *Tinker,* a malicious act is " 'a wrongful act, done intentionally, without just cause or excuse.' " *Tinker,* 193 U.S. at 486, 24 S.Ct. 505 (quoting *Bromage v. Prosser,* 4 Barn. & C. 247). At least one bankruptcy court in the Tenth Circuit has examined this formulation and concluded that the malice prong of § 523(a)(6) is satisfied on a showing that the injury was inflicted without just cause or excuse. *See Bombardier Capital, Inc v. Tinkler (In re Tinkler),* 311 B.R. 869, 880 (Bankr.D.Colo.2004). Although neither *Geiger* nor the Tenth Circuit have explicitly addressed whether a plaintiff must demonstrate that an injury occurred without just cause or excuse in a § 523(a)(6) proceeding or even what circumstances might establish such an element, we need not decide that here as the punitive portion of the UFTA judgment clearly found that Shore intended, without just cause or excuse, to commit an injury.

■ Next, Shore argues that the bankruptcy court erred when it applied the collateral estoppel doctrine because McCain did not have a property interest in the monies transferred and therefore, there could be no injury to McCain's interests. Shore supports this argument by citing to *In re Saylor,* 108 F.3d 219 (9th Cir.1997).

---

8. *Roberts v. Beebe,* 200 Kan. 119, 434 P.2d 789, 796 (1967) (citing Pattern Instructions Kansas 3.02 and 3.03 (current version Pattern Instructions Kansas 3d Civil, §§ 103.03 and 103.04)).

In *Saylor*, the Ninth Circuit affirmed the bankruptcy court, which found that a debt incurred through a state court judgment on a breach of contract claim did not give a creditor an actual property interest in property debtors had transferred to third parties for little or no consideration during the pendency of the state court case. Because at the time the creditor brought the nondischargeability complaint, the creditor had no property interest in the property transferred, the bankruptcy court found that the creditor lacked standing to argue injury under § 523(a)(6) based on that transfer. As stated by the Ninth Circuit BAP, which had also affirmed the bankruptcy court: "Absent either a right to payment or a damaged property interest, there is no debt which could be nondischargeable, and the complaint does not state a claim for relief." *In re Saylor*, 178 B.R. 209, 215 (9th Cir. BAP 1995), *aff'd*, 108 F.3d 219 (9th Cir.1997).

The bankruptcy court determined that *Saylor* is distinguishable from this case because in *Saylor*, at the time the transfers occurred, the creditor did not have a UFTA judgment or an actual property interest in the transferred property and the debtor was the transferee not the transferor of the property. In contrast to *Saylor*, here the UFTA judgment established a right to payment based on the damage Shore did to McCain's interest when making the pertinent transfers. We find no error in the bankruptcy court's conclusions.

## III. *CONCLUSION*

For the reasons stated above, we affirm the bankruptcy court.

### JUDGMENT

This case originated in the United States Bankruptcy Court for the District of Kansas at Wichita.

The judgment of that court is AFFIRMED.