**In re Timothy J. LONGLEY, Debtor.**

**Mitsubishi Motors Credit of America, Inc., Plaintiff–Appellee,**

v.

**Timothy J. Longley, Defendant–Appellant.**

**BAP No. NO–98–061.**
**Bankruptcy No. 97–03188.**
**Adversary No. 97–0334.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

July 9, 1999.

---

Submitted on the briefs: * H. Gregory Maddux of Maddux & Maddux, Tulsa, Oklahoma, for Defendant–Appellant.

Bruce F. Klein of Metheny, Mitchell, Davis & Klein, Oklahoma City, Oklahoma, for Plaintiff–Appellee.

Before McFEELEY, Chief Judge, BOULDEN, and KRIEGER, Bankruptcy Judges.[1]

## OPINION

KRIEGER, Bankruptcy Judge.

At gunpoint, a debtor relinquished his 1994 Mitsubishi 3000 GT to a drug dealer. He filed for Chapter 7 bankruptcy relief several months later. The creditor who held a recorded lien against the vehicle obtained a judgment declaring the debtor's obligation to be non-dischargeable as a willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6). For the reasons set forth below, we conclude that the Bankruptcy Court's judgment must be REVERSED.

## I. JURISDICTION AND STANDARD OF REVIEW

With the consent of the parties, a Bankruptcy Appellate Panel has jurisdiction to hear appeals from final judgments and orders of Bankruptcy Courts within the circuit. 28 U.S.C. § 158(a), (b)(1), (c)(1). As neither party has opted to have this appeal heard by the United States District Court for the Northern District of Oklahoma, each is deemed to have consented to the jurisdiction of the Bankruptcy Appellate Panel. 10th Cir. BAP L.R. 8001-1(d).

A Bankruptcy Appellate Panel may affirm, modify or reverse a Bankruptcy Court's judgment or order, or remand for further proceedings. Conclusions of law

are reviewed *de novo.* *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Findings of fact shall not be set aside unless clearly erroneous. Fed. R. Bankr.P. 8013; *First Bank v. Reid (In re Reid),* 757 F.2d 230, 233–34 (10th Cir.1985). Factual findings, even those based on stipulated facts presented by the parties, are subject to a "clearly erroneous" standard of review. *Adair State Bank v. American Cas. Co.,* 949 F.2d 1067, 1072 (10th Cir.1991); *see Anderson v. City of Bessemer City,* 470 U.S. 564, 573–75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "A finding of fact is 'clearly erroneous' if it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." *Cowles v. Dow Keith Oil & Gas, Inc.,* 752 F.2d 508, 511 (10th Cir.1985) (citation omitted).

## II. BACKGROUND

Timothy Longley (Longley) filed his bankruptcy petition on July 11, 1997. Mitsubishi Motor Credit (Mitsubishi) filed an adversary proceeding seeking either denial of Longley's discharge pursuant to 11 U.S.C. § 727(a)(2)(A), or alternatively, a determination that Longley's obligation was excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) because prior to the bankruptcy Longley had, without Mitsubishi's consent, transferred a vehicle against which Mitsubishi held a recorded lien. The parties filed a written factual stipulation with the Bankruptcy Court. According to the record on appeal, no other evidence was presented.[2] Based upon the stipulated facts, the Bankruptcy Court denied Mitsubishi's objection to Longley's discharge but determined that Longley's debt to Mitsubishi was non-dischargeable,

---

*. Pursuant to the Order Granting Motion to Strike Oral Argument entered on May 3, 1999, this appeal was submitted on the briefs.

1.  Honorable Marcia S. Krieger, United States Bankruptcy Judge, United States Bankruptcy

Court for the District of Colorado, sitting by designation.

2.  The Bankruptcy Court excluded a partial transcript of a Rule 2004 examination designated as Exhibit A to Mitsubishi's trial brief.

and set a hearing to quantify the amount of the debt. The parties stipulated to the value of the vehicle, resulting in a non-dischargeable judgment of $15,000.00. Longley appeals the Bankruptcy Court's determination of non-dischargeability. Mitsubishi has not appealed the Bankruptcy Court's denial of its objection to discharge.

The stipulated facts presented to the Bankruptcy Court follow. Longley purchased a 1994 Mitsubishi 3000 GT (the vehicle) in 1994. He financed the purchase price of $25,495.00 by executing a Consumer Credit Sale Agreement and secured the debt with a lien in favor of Mitsubishi. During the following two years, Longley experienced financial difficulties and ultimately lost his job. While unemployed, he agreed to participate in an illegal drug transaction with John Doe (Doe), but backed out of the transaction before it was completed. As a result of the failed transaction, Doe repeatedly demanded that Longley pay him $16,000.00. To escape such demands, Longley and his wife moved from Tulsa to Skiatook, Oklahoma.

In early March 1996, Doe and three unidentified individuals confronted Longley and his wife at their residence. Brandishing weapons, Doe and the others threatened Longley and his wife with immediate bodily harm if Longley did not pay Doe. When Longley stated that he did not have the $16,000.00, Doe took possession of the vehicle, purportedly as collateral until the debt was paid. Doe also demanded that Longley sign over the vehicle title, but Longley replied that he would not be able to get the title from his safe deposit box until the following Monday morning. Doe agreed to meet Longley the following Monday, but before departing with the vehicle threatened Longley and his wife with physical harm if they reported the car

as stolen. Longley ultimately signed over the title the following Monday.[3]

Several weeks later, Doe and two unidentified individuals returned to Longley's residence and again demanded $16,000.00. Longley replied that he did not have the money and advised Doe that if Doe appeared at his residence again, he would contact the police. That was the last time Longley saw the vehicle.

The vehicle remains registered in Longley's name subject to Mitsubishi's lien and has not been re-tagged. Longley made payments to Mitsubishi through November 1996, but did not advise Mitsubishi of the status of the vehicle until after his bankruptcy filing.

## III. DISCUSSION

The question presented in this appeal is whether the Bankruptcy Court erred in concluding that Longley willfully and maliciously injured Mitsubishi by transferring the vehicle to Doe. We hold that the Bankruptcy Court failed to apply the appropriate legal standard and clearly erred in making its factual findings.

Relying upon the Tenth Circuit authority of *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524 (10th Cir.1993), the Bankruptcy Court reasoned that a debtor's conversion of secured property gives rise to a non-dischargeable debt. It then found that *Pasek* was unaffected by the unanimous decision of the United States Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Applying the *Pasek* standard to the stipulated facts, the Bankruptcy Court found:

> ... that the transfer of the Car by Longley to John Doe constitutes conversion. Longley deliberately and intentionally transferred possession and title to the Car to John Doe in total disre-

---

**3.** It is somewhat unclear what Longley signed over to Doe. Customarily under Oklahoma law, motor vehicle titles are held by lienors. Indeed, the only copy of the title presented to the Bankruptcy Court was attached to Mitsu-

bishi's Complaint. It reflects Mitsubishi's lien and indicates that the motor license agent processes the title and returns it to the secured party.

gard of the lien interest of Mitsubishi. Longley was fully aware that Mitsubishi had a valid security interest in the Car and neither had consented nor would consent to the transfer. When Longley transferred the Car to John Doe, he told Doe to never return. Certainly he knew that if John Doe did not return, the Car would not return of its own accord. Longley's conduct caused Mitsubishi to lose its collateral. Mitsubishi's rights as a secured party with a security interest in the Car as collateral were converted.

Mitsubishi argues that the Bankruptcy Court correctly determined that Longley willfully and maliciously injured its rights by conversion. Longley argues that the Bankruptcy Court erred because the facts presented to it established only Longley's intentional transfer of the vehicle but no intent to injure Mitsubishi or its lien interest.

■ Section 523(a)(6) of the Bankruptcy Code provides that a debt "for willful and malicious injury by a debtor to another entity or the property of another entity" is not subject to discharge. 11 U.S.C. § 523(a)(6). The burden of proof is upon the creditor to establish that the debt is non-dischargeable by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The legal question presented is the meaning of "willful and malicious injury" in the context of a debtor's conversion of secured property. This requires analysis of three pivotal Tenth Circuit cases interpreting § 523(a)(6), and of the United States Supreme Court's recent decision of *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

In the Tenth Circuit, the phrase "willful and malicious injury" has been interpreted as requiring proof of two distinct elements—that the injury was both "willful" and "malicious." Failure of a creditor to establish either willfulness or malice renders the debt dischargeable. *Farmers Ins. Group v. Compos (In re Compos)*, 768 F.2d 1155 (10th Cir.1985). In *Compos*, the Tenth Circuit addressed the situation of a debtor who, while driving under the influence of alcohol, ran into the plaintiff's car. The Court reasoned that "willful" modified "injury." Thus, it ruled that § 523(a)(6) excepts from discharge only obligations arising from acts intended to cause injury. *Compos*, 768 F.2d at 1158. Although the debtor knew of his inebriated condition and intentionally drove the car, because the debtor did not intend to injure the victim, the willfulness requirement of § 523(a)(6) was not satisfied.

In *CIT Financial Services, Inc. v. Posta (In re Posta)*, 866 F.2d 364 (10th Cir.1989), the Tenth Circuit held that a debt arising from an unsophisticated debtor's technical conversion of a trailer by sale without the secured creditor's knowledge was dischargeable. The Court departed from its analysis in *Compos* by concluding that a debtor's intent to injure may be established by proof that it was reasonably foreseeable that a debtor's conduct would result in injury. The Court first construed willful with regard to the debtor's conduct rather than the injury caused, stating that a willful act was one that was volitional and deliberate. *Posta*, 866 F.2d at 367.[4] Second, the Court shifted the inquiry as to the debtor's motivation to the malicious element. "[T]he focus of the 'malicious' inquiry is on the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor...." *Posta*, 866 F.2d at 367. Under *Posta*, "willful" required proof that a debtor's conduct was deliberate; "malicious"

---

4. This is consistent with the Tenth Circuit opinion of *First National Bank v. Franklin (In re Franklin)*, 726 F.2d 606 (10th Cir.1984), in which the Court held that a doctor's grossly negligent actions in treating a patient amounted to willful and malicious injury.

*See also Coats State Bank v. Grey (In re Grey)*, 902 F.2d 1479, 1481 (10th Cir.1990) ("[M]aliciousness is established if the debtor possesses actual knowledge, or it is reasonably foreseeable, that his conduct will result in injury to the creditor.").

required proof that the debtor either intended the injury or that the debtor reasonably should have foreseen it. The Court further reasoned that in the context of a debtor's sale of collateral without consent by the secured creditor, malice could be established through evidence of specific intent to injure or "by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights." *Posta*, 866 F.2d at 367. In dicta, the Court noted that knowledge of the creditor's rights and the effect of the debtor's action upon such rights could be inferred from evidence of the debtor's experience in business, concealment of the sale or an admission that the debtor read and understood the security agreement. *Posta*, 866 F.2d at 366.

The Tenth Circuit visited the meaning of willful and malicious for a third time in *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524 (10th Cir.1993). In *Pasek*, the Court reaffirmed its belief that reasonable foreseeability of injury was sufficient to make the injury intentional. However, the Court did not specify whether focus upon the debtor's intent fell within the scope of "willful" or "malicious," stating, "we believe the rule fully supported by our cases is that 'willful and malicious injury' occurs when the debtor, without justification or excuse, and with full knowledge of the specific consequences of its conduct, acts notwithstanding, knowing full well that his conduct will cause particularized injury." *Pasek*, 983 F.2d at 1527. In addition to reading willful and malicious as an integrated standard, the Court also introduced a new consideration of whether the debtor acted with justification or excuse.

■ The shift in analysis from *Compos* to *Posta* was directly addressed by the United States Supreme Court in *Geiger, supra*. *Geiger* concerned the dischargeability of a medical malpractice judgment arising from the doctor/debtor's negligent or reckless conduct. In holding that negligent or reckless conduct does not fall within § 523(a)(6), *Geiger* explicitly overruled *Posta's* holding that the willful element requires only an intentional act. The Supreme Court held precisely to the contrary, that § 523(a)(6) requires that a debtor intend to injure either a creditor or a creditor's property. The Court stated, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Geiger*, 523 U.S. 57, 118 S.Ct. at 977. This definition of willful is the same as that stated by the Tenth Circuit Court of Appeals in *Compos*, a much narrower definition than that enunciated in *Posta*. This narrow reading of "willful" is akin to the standard of deliberate injury necessary for an intentional tort.[5]

---

**5.** Post-*Geiger* cases are divided as to whether "willful and malicious injury" is now a single standard requiring proof of an intentional injury or whether "willful" requires an intentional injury and "malicious" requires that the injurious act be done "without justification or excuse." However, it is not necessary for purposes of this appeal to determine the definition of maliciousness. Cases falling into the first group include: *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 605 (5th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1249, 143 L.Ed.2d 347 (1999) (just cause or excuse approach is inappropriate); *Molina v. Seror (In re Molina)*, 228 B.R. 248 (9th Cir. BAP 1998) (declining to decide whether an act done without just cause or excuse is required after *Geiger*); *Branam v.* *Crowder (In re Branam)*, 226 B.R. 45 (9th Cir. BAP 1998) (malice for purposes of § 523(a)(6) requires an act done with actual intent to cause injury). Cases falling into the second group include: *America First Credit Union v. Gagle (In re Gagle)*, 230 B.R. 174 (Bankr. D.Utah 1999); *Grange Mut. Cas. Co. v. Chapman (In re Chapman)*, 228 B.R. 899 (Bankr. N.D.Ohio 1998); *Aldus Green Co. v. Mitchell (In re Mitchell)*, 227 B.R. 45 (Bankr.S.D.N.Y. 1998); *Mega Enters., Inc. v. Lahiri (In re Lahiri)*, 225 B.R. 582, 587 (Bankr.E.D.Pa. 1998); *French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson)*, 224 B.R. 659 (Bankr. N.D.Ill.1998); *Johnson v. Evans (In re Evans)*, No. 98–60037, 98–6078, 1998 WL 404178, at *5 (Bankr.N.D.Ohio June 26, 1998).

■ Although the facts in *Geiger* did not concern a debtor's conversion of collateral, the text of the opinion reaffirms that conversion can, under certain circumstances, give rise to a non-dischargeable debt pursuant to § 523(a)(6). The Court specifically referred to its earlier decision under the Bankruptcy Act, *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), in which it had held that "a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice." *Davis*, 293 U.S. at 332, 55 S.Ct. 151.

■ In light of *Geiger*, the standard for willful under § 523(a)(6) appears to be the same for conversion as for any other injury; to be willful, the debtor must intend that conversion of the collateral injure the creditor or the creditor's lien interest. However, *Geiger* does not address the evidence by which intent to injure can be established. We believe that as to proof of intent to injure in the context of conversion of secured property, *Posta* and *Pasek* remain instructive. Intent may be established by either direct or indirect evidence. *Posta*, 866 F.2d at 367. Willful injury may be established by direct evidence of specific intent to harm a creditor or the creditor's property. *Id.* Willful injury may also be established indirectly by evidence of both the debtor's knowledge of the creditor's lien rights and the debtor's knowledge that the conduct will cause particularized injury. *Pasek*, 983 F.2d at 1527. *See also* RESTATEMENT (SECOND) OF TORTS § 8A (1965) ("The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.").

■ In the case at bar, the Bankruptcy Court correctly found that Longley intentionally transferred the vehicle to Doe. However, consistent with the teaching of *Geiger*, Longley's intentional act is insufficient to satisfy the willfulness element of § 523(a)(6). For Longley's obligation to be non-dischargeable, Mitsubishi was required to present evidence that Longley intended to injure it or its lien interest. We find the stipulated facts were inadequate in this regard. The Bankruptcy Court's findings that Longley transferred the vehicle "in total disregard of the lien interest of Mitsubishi" and that he was "fully aware that Mitsubishi had a valid security interest in the car and neither had consented or would consent to the transfer" were unsupported by the factual stipulation and therefore constitute clear error.

Neither Mitsubishi's Security Agreement nor the terms thereof were presented to the Bankruptcy Court. Although Longley admitted in the factual stipulation that Mitsubishi held a lien interest in the car, nothing in the factual stipulation established that Longley was aware of or considered of the lien or its terms at the time he transferred the vehicle to Doe. In the absence of evidence of the terms of the Security Agreement and Longley's appreciation of such terms, one cannot conclude that Longley was required to obtain Mitsubishi's permission prior to transferring possession of the vehicle or that Longley's failure to disclose the transfer followed by payment constituted concealment.

According to the stipulated facts, Doe's purpose in obtaining possession of the vehicle was to secure repayment of $16,-000.00. Assuming commercial regularity in the transaction, Longley may have been legally entitled to grant Doe a junior lien in the vehicle without Mitsubishi's permission. The real problem with the transaction was not the creation of a junior lien, but the disappearance of the vehicle, which precluded Mitsubishi from enforcing its lien rights. The Bankruptcy Court correctly observed that once Longley gave Doe possession of the vehicle and signed whatever Doe demanded, he lost control

over it. It is in conjunction with this act that Longley's intent must be assessed. There simply is nothing in the factual stipulation which establishes that Longley intended to harm Mitsubishi or its lien rights when he transferred the vehicle to Doe. The only evidence of Longley's intent at such time was his desire to avoid the physical harm which Doe threatened.

Although the facts presented to the Bankruptcy Court establish that Longley intentionally transferred the vehicle, they were insufficient to support a conclusion that Longley willfully intended to injure Mitsubishi or its lien interest. The Bankruptcy Court's judgment that Longley's obligation to Mitsubishi is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) is therefore REVERSED.