In re Paul Craig SMITH and Christine Kay Smith, Debtors.

Louis Nolan, Shawna Nolan, Christopher Z. James, and Donna E. James, Plaintiffs,

v.

Paul Craig Smith and Christine Kay Smith, Defendants.

Bankruptcy No. 03–24589 SBB.
Adversary No. 03–2012 MER.

United States Bankruptcy Court, D. Colorado.

Feb. 4, 2005.

Caroline C. Fuller, Fairfield & Woods, P.C., Denver, CO, for Plaintiffs.

Randall B. Pearce, Hall & Pearce, P.C., Grand Junction, CO, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

MICHAEL E. ROMERO, Bankruptcy Judge.

THIS MATTER comes before the Court on the Plaintiffs' Motion for Summary Judgment and Defendants' Response thereto. The Court, having reviewed the file, including the supplemental authority in support of the motion, having heard arguments of counsel and being otherwise advised in the premises, grants the Plaintiffs' Motion for Summary Judgment based on the following discussion.

### Procedural Background

Louis and Shawna Nolan (the "Nolans") and Christopher and Donna James (the "James") (jointly the "Plaintiffs") filed their Motion for Summary Judgment (the "Motion") requesting this Court determine an underlying state court judgment, including the award of attorney fees and costs, to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Craig and Christine Smith (the "Smiths") filed their Response to the Motion conceding that *except* as to the dischargeability of the attorney fees and costs, the findings of fact and conclusions of law entered by the District Court, Mesa County, Colorado on August

12, 2003, *nunc pro tunc* July 11, 2003, in Case No. 02 CV 44 (the "Judgment") establish the necessary elements required under § 523(a)(6) and that the doctrine of collateral estoppel precludes the Smiths from re-litigating those issues before the Bankruptcy Court.[1] *See Response to Motion for Summary Judgment,* ¶ 3.

The Smiths, however, do not concede the attendant attorney fees and costs awarded as part of the Judgment are also nondischargeable pursuant to § 523(a)(6). The

1. The Court agrees and notes that, as a matter of law, all of the elements necessary for collateral estoppel to apply in this case are present, i.e.: (1) the issue to be precluded is the same as that involved in the underlying state court judgment; (2) the issues were actually litigated by the parties in the prior action; and (3) the state court's determination was necessary to the resulting final and valid Judgment. *See Klemens v. Wallace,* 840 F.2d 762, 765 (10th Cir.1988).

2. Both parties' pleadings have incorrectly cited *Colo.Rev.Stat.* § 13–17–202 as the basis for the State Court's award of attorney fees and costs. *Colo.Rev.Stat.* § 13–17–202 is Colorado's Offer of Settlement Statute and is not applicable to this case. The correct statute is *Colo.Rev.Stat.* § 13–17–102.

3. *Colo.Rev.Stat.* § 13–17–102 states in relevant part,
 (1) Subject to the provisions of this section, in any civil action of any nature commenced or appealed in any court of record in this state, the court may award, except as this article otherwise provides, as part of its judgment and in addition to any costs otherwise assessed, reasonable attorney fees.
 (2) Subject to the limitations set forth elsewhere in this article, in any civil action of any nature commenced or appealed in any court of record in this state, the court shall award, by way of judgment or separate order, reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification.
 . . .
 (4) The court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party

attorney fees were awarded pursuant to what is known as Colorado's "frivolous and groundless" statute [2] which instructs, *inter alia,* that where a party defends an action and the Court determines the defense lacked substantial justification, attorney fees may be assessed. *See Colo. Rev. Stat.* § 13–17–102.[3]

### Background Facts

For purposes of this Motion the Court finds the following facts undisputed.[4] The

brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under the Colorado rules of civil procedure or a designation by a defending party under section 13–21–111.5(3) that lacked substantial justification. As used in this article, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.
. . .
(6) No party who is appearing without an attorney shall be assessed attorney fees unless the court finds that the party clearly knew or reasonably should have known that his action or defense, or any part thereof, was substantially frivolous, substantially groundless, or substantially vexatious; except that this subsection (6) shall not apply to situations in which an attorney licensed to practice law in this state is appearing without an attorney, in which case, he shall be held to the standards established for attorneys elsewhere in this article.
. . .

4. As part of their Motion, the Plaintiffs included a section entitled "Material Undisputed Facts." This section incorporates 23 different factual events which the Plaintiffs claimed were undisputed and referenced eight attached exhibits which supported the referenced events. In the Response to Motion for Summary Judgment, no challenge to either the "undisputed facts" nor the exhibits were raised. Therefore the Court will treat the cited facts as uncontested and the attached exhibits as authentic.

Nolans, James and Smiths are all owners of property situated in a subdivision named Bluestone Meadows, located in De-Beque, Colorado. The Nolan property lies between the Smith and the James properties. Each party owns shares of water running through all three properties. The Nolan property was previously owned by a Mr. McClaskey, who with the Smiths' consent, installed an underground pipe and water system, using a pre-existing ditch that ran from the Smith property to the McClaskey property. The Nolans and James' share of water is regulated through the pipe and water system located on the Smith property. The water is used to irrigate the parties' respective pastures and hay crop.

In April of 1999, the Smiths informed Mr. McClaskey that they had inadvertently located a portion of their driveway and utilities on his property. To remedy the situation, Mr. McClaskey and the Smiths exchanged easements over their respective properties. The purpose of the easement across the McClaskey property was to allow the Smiths to use the property defined in the easement for ingress and egress to their property and for their utility lines. The purpose of the easement across the Smith property was to allow McClaskey to manage and maintain the irrigation system running across the Smith property, and to insure the delivery of water to the adjoining properties. In April of 2001, the Nolans purchased the McClaskey property, subject to the existing ingress and egress and utility easements in favor of the Smiths.

On January 29, 2002, the Plaintiffs filed a lawsuit against the Smiths in Mesa County District Court, (the "State Court")

alleging breach of duty, negligence, improper use of an easement, trespass, injunction and conversion. *See Verified Complaint (Motion,* Exhibit A). The Plaintiffs requested consequential, incidental and exemplary damages, as well as reasonable attorney fees and costs for maintaining the action. A trial on the Plaintiffs' claims was held on July 11, 2003.[5] At the conclusion of the trial, the State Court entered its oral ruling[6] and made the following findings of fact.

(i) The Smiths had improperly used their easement rights across the Nolans' property;

(ii) the Smiths "persistently, improperly and illegally interfered with the Plaintiffs' irrigation rights;"

(iii) the Smiths "intentionally damaged the weir and all of the Plaintiffs' irrigation system;"

(iv) the Smiths "willfully and intentionally interfered with the Plaintiffs' ability to obtain adequate water flow by admittedly cementing the weir, blocking access to it, damaging pipes, tossing large rocks in the system as well as sandbags and trash and other acts that most people would regard as criminal and vexatious;"

(v) the Smiths trespassed by recklessly and intentionally flooding the Nolans' property; and

(vi) the Smiths embarked on an "intentional and deliberate campaign of terror" primarily directed against the Nolans.

*See Judgment.*

The State Court awarded damages in favor of the Nolans in the amount of

---

5. The Smiths appeared in this action *pro se.*

6. The transcript of the oral ruling is attached to the Motion as Exhibit B. The State Court issued the Judgment on August 12, 2003,

*nunc pro tunc* July 11, 2003, memorializing and incorporating its findings of fact and conclusions of law. *Motion,* Exhibit C.

$11,100.00 and in favor of the James in the amount of $1,400.00. The State Court also entered an injunction against the Smiths, enjoining and prohibiting them from (i) interfering with the Plaintiffs' right of access to the Smiths' property for the purpose of reasonably managing the water or the irrigation system; (ii) interfering with reasonable maintenance of the irrigation system; (iii) interfering with the delivery of the Plaintiffs' water; and (iv) "destroying, impeding, or in any other way altering or interfering with the weir, the cistern, or any method of delivery via that system of water to the Plaintiffs' properties." *Id.* The State Court further ordered the Smiths could only use the easement for ingress and egress purposes and enjoined them to cease all other uses within the easement, including agricultural operations, and from erecting or placing further encroachments within the easement.[7] *Id.*

The State Court also found the Smiths' defense of the State Court action "substantially groundless, substantially frivolous and substantially vexatious," entitling Plaintiffs to an award of attorney fees and costs. *Id.* As a result of these findings, the State Court awarded attorney fees in the amount of $31,485.69 and costs in the amount of $1,088.10. *Id.*

The Smiths argue the attorney fees and costs are dischargeable in this case because the State Court failed to make any findings of fact that would constitute a finding of an intentional, willful and malicious injury as required by § 523(a)(6). The Smiths further argue there are material disputed facts surrounding the award of the attorney fees, including whether they intended willfully and maliciously to injure the Plaintiffs, which preclude the Court from granting the Plaintiffs' Motion for summary judgment as it relates to the

award of attorney fees and costs in this case.

**Discussion**

Summary judgment is to be granted if the pleadings, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 incorporated by Fed.R.Bankr.P. 7056. In applying this standard, the Court is to "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster,* 172 F.3d 756, 759 (10th Cir. 1999).

11 U.S.C. § 523(a)(6) states, in relevant part,

A discharge under ... this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

The burden of proof is on the creditor to establish by a preponderance of the evidence the debt is nondischargeable. *In re Longley,* 235 B.R. 651, 655 (10th Cir. BAP 1999) (citing *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). For a debt to be nondischargeable under 11 U.S.C. § 523(a)(6), the Plaintiff must prove, "a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *see also In re Moore,* 357 F.3d 1125, 1129 (10th Cir.2004).

Intent may be established by either direct or indirect evidence. *In re Longley,* 235 B.R. at 657 (citing *CIT Financial Ser-*

---

**7.** The Smiths concede the injunction issued by the State Court is not a claim as defined by the Bankruptcy Code and therefore is nondischargeable.

*vices, Inc. v. Posta,* 866 F.2d 364 (10th Cir.1989)). Willful injury may be established by direct evidence of specific intent to harm a creditor or the creditor's property. *Id.* Willful injury may also be established indirectly by evidence of both the debtor's knowledge of the creditor's rights and the debtor's knowledge that the conduct will cause particularized injury. *In re Longley,* 235 B.R. at 657 (citing *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek,* 983 F.2d 1524 (10th Cir.1993)).

Under the particular facts of this case, the Smiths admit their actions leading to the State Court case constitute a willful and malicious injury under § 523(a)(6). Accordingly, it would appear the Court could grant summary judgment in favor of the Plaintiffs as to their underlying damages and then set the State Court's award of attorney fees and costs for a separate trial. However, this case raises the prefatory question of whether an attendant debt, such as an award of attorney fees and costs, is also nondischargeable as a liability resulting from the underlying nondischargeable debt. There is a paucity of controlling legal authority specifically addressing this issue in the context of 11 U.S.C. § 523(a)(6). However, the U.S. Supreme Court addressed a similar issue under § 523(a)(2)(A). *See Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998).

In *Cohen,* the Supreme Court held that all liability arising from a debtor's fraudulent behavior, including an award of treble damages, attorney fees and costs, was nondischargeable pursuant to § 523(a)(2)(A). The Court used a four-pronged analysis, analyzing the text of § 523(a)(2)(A), the meaning of the parallel provisions in the statute, the historical origin of the fraud exception and the policy of holding certain debts nondischargeable. The Court concluded attendant treble damages, attorney fees and costs, even though they may exceed the value originally obtained by the debtor, were nonetheless nondischargeable if the underlying debt was found to be nondischargeable. *Cohen,* 523 U.S. at 223, 118 S.Ct. 1212.

A handful of bankruptcy courts have employed this rationale in the specific context of § 523(a)(6) cases. In *In re Auffant,* 268 B.R. 689 (Bankr.M.D.Fla.2001), the Court, after finding the debtor had willfully and maliciously submitted a false claim to her insurance company, determined that an award of attorney fees to which the plaintiff was entitled under a Florida Offer of Judgment Statute was also nondischargeable. Similarly, in *In re Scheller,* 265 B.R. 39 (Bankr.S.D.N.Y. 2001), the Court determined all components of an underlying judgment, including attorney fees, costs and expenses (apparently awarded pursuant to the Connecticut Unfair Trade Practices Act) were nondischargeable under § 523(a)(6). In *In re Kovler,* 249 B.R. 238, 263 (Bankr.S.D.N.Y. 2000), the Court held that attorneys' fees recoverable as a result of tortious acts fall within Section 523(a)(6)'s discharge exception. Yet another Bankruptcy Court has opined "where attorneys' fees are available outside bankruptcy as a matter of law, then they are available inside bankruptcy in a dischargeability proceeding as well." *In re Behn,* 245 B.R. 444, 447 (Bankr. W.D.N.Y.2000). Thus, there is persuasive legal authority that concludes attorney fees flowing from debts found to be nondischargeable under § 523(a)(6), are themselves nondischargeable.[8]

---

**8.** Several lower Courts prior to *Cohen* have also found that any liability resulting from a debt that is found to be nondischargeable is also nondischargeable. *See In re Stokes,* 150 B.R. 388 (W.D.Tex.1992) (all debts including punitive damages, legal fees and interest are

Although the Smiths have not addressed the applicability of *Cohen* and its progeny to the facts of their case, they assert two other reasons why summary judgment should not be granted as to the award of attorney fees and costs. First, the Smiths argue the § 523(a)(6) challenge is directed to two separate and distinct sets of actions, those actions which form the basis for the State Court litigation, and separately, those actions relating to their conduct during the State Court litigation. Alternatively, the Smiths argue the Court should draw a distinction between attorney fees awarded pursuant to a state statute that includes a sanction clause, and fees awarded pursuant to a separate and distinct state statute, such as a frivolous and groundless fee statute. Finally, the Smiths argue that if the Court is inclined to determine the attorney fees and costs nondischargeable, the Smiths request the Court assess the reasonableness of the fee award. The Court will address each of these arguments in turn.

### A. Willful and Malicious Intent to Cause Injury.

■■■ Although *Cohen* does not specifically address whether attendant attorney

fees associated with an underlying state court judgment are nondischargeable pursuant to § 523(a)(6), the facts and circumstances of this case are sufficiently analogous to those facts in *Cohen* such that its reasoning and conclusion should apply. As the Supreme Court stated in *Cohen*, the language found in § 523 defines several categories of debts that are nondischargeable. The specific language, "debt for" as found in § 523(a) includes "debt as the result of," "debt with respect to" or "debt by reason of." *Cohen*, 523 U.S. at 220, 118 S.Ct. 1212. In this case, the language of the Judgment makes it clear the attorney fees and costs awarded by the State Court were awarded "with respect to" or "by reason of" the Smiths' underlying conduct giving rise to the litigation. *Judgment*, ¶ 14. Moreover, the attorney fees were a debt incurred as a result of the Smiths asserting a meritless defense relating to their underlying conduct which the Smiths now willingly admit is nondischargeable pursuant to § 523(a)(6). As a result, the attorney fee award must be considered to be nondischargeable. To conclude otherwise would ignore the reasoning and analysis articulated by the Supreme Court in its *Cohen* opinion.[9]

---

nondischargeable under § 523(a)(6); *see also In re Beale*, 253 B.R. 644 (Bankr.D.Md.2000) (analyzing three separate theories allowing for attendant attorney fees to be nondischargeable under § 523(a)(6)); *In re McGuffey*, 145 B.R. 582 (Bankr.N.D.Ill.1992) (following the majority of Courts in determining that if a judgment debt is nondischargeable, any attorney fees awarded in the judgment are also nondischargeable); *In re Ziegler*, 109 B.R. 172 (Bankr.W.D.N.C.1989) (attorney fees assessed as part of a judgment against a debtor in a malicious prosecution case are nondischargeable under § 523(a)(6)); *In re Hopper*, 71 B.R. 67 (Bankr.D.Colo.1987) (attorney fees and costs associated with willful and malicious conduct were nondischargeable pursuant to § 523(a)(6)).

9. Even if this Court did not find *Cohen* applicable to the specific facts of this case, the outcome of this case would not differ. The State Court's findings of fact as set forth below adequately demonstrate the Smiths' underlying conduct and their conduct in defending the State Court action was meritless, intentional and willful. Although, the State Court does not expressly use the term "malicious" in its findings, this Court is satisfied the Smiths' conduct meets this element of § 523(a)(6). The term "malicious" has been defined as wrongful and without just cause. *See Kovler*, 249 B.R. at 262. Here, the Smiths' defense against the Plaintiffs' suit was determined to be substantially vexatious. "A vexatious claim is one brought or maintained in bad faith to annoy or harass. It may include conduct that is arbitrary, abu-

### B. Award of Attorney Fees Pursuant to a Separate State Statute.

■ The Smiths' second argument is similarly unpersuasive. The Smiths attempt to draw a fine line distinction between the facts of their case and the facts of *In re Stokes*, 150 B.R. 388 (W.D.Tex. 1992), a pre-*Cohen* case standing for the proposition that where an underlying judgment debt is nondischargeable, fees and costs associated with the debt are also nondischargeable. The Smiths argue *Stokes* is distinguishable from their case because the attorney fees awarded in the *Stokes* case were awarded pursuant to the underlying statute that the debtor in that case was found to have violated. The fact that the State Court in this case awarded attorney fees pursuant to a *separate* statute, rather than pursuant to a statute or law the Smiths were determined to have violated, is a distinction without difference. Moreover, the Smiths have failed to provide the Court with any legal authority supporting their assertion and the Court has not otherwise found any legal authority supporting the Smiths' argument. To the contrary, legal authority exists supporting an opposite conclusion.

In *In re Chaires*, 249 B.R. 101 (Bankr. D.Md.2000), the bankruptcy court faced a similar situation to this case and determined attorney fees awarded pursuant to a separate statute nondischargeable pursuant to § 523(a)(6). In *Chaires*, a debtor/attorney commenced a civil action on behalf of a client against an insurance company that was ultimately dismissed with prejudice. The insurance company petitioned the state court for an Order directing the debtor/attorney to pay its attorney fees and costs pursuant to a *separate* Maryland attorney fee statute.[10] The state court agreed with the insurance company and entered judgment assessing attorney fees against the debtor in the amount of $74,435.06. The attorney fees were challenged by the insurance company as nondischargeable in the debtor's subsequent bankruptcy case. The bankruptcy court examined the particular elements of the Maryland fee statute and how they were applied and ultimately determined the attorney fees to be nondischargeable. *Chaires*, 249 B.R. at 107–108.

In this case, the State Court made the following findings of fact:

> The Court concludes that the defense of this action by the Smiths was substantially groundless, substantially frivolous, and substantially vexatious, and the Smiths clearly knew or reasonably should have known that it was, particularly with regard to the easement issue, and in fact, the Court concludes that the Smiths knew it was an easement that they obtained in 1999 and not a property line adjustment. The Smiths' actions of trespass and vandalism were *intentional, willful,* concerted and, in the end, indefensible. As a result, Plaintiffs are awarded their reasonable attorney fees and costs . . . (italics added).

sive, stubbornly litigious, or disrespectful of truth." *Bockar v. Patterson*, 899 P.2d 233, 235 (Colo.App.1994) (citations omitted). This finding leads this Court to conclude the Smiths' conduct was wrongful and is sufficient to constitute malicious behavior under § 523(a)(6). Accordingly, based on the State Court's findings of fact, this Court finds the Smiths' defense of the State Court action was intended to cause a deliberate or intentional injury and not merely a deliberate or inten-

tional act leading to the Plaintiffs' injury. *Geiger*, 523 U.S. at 61, 118 S.Ct. 974.

10. The statute, similar to Colorado's frivolous and groundless statute, enabled the state court to award attorney fees to an opposing party if the court determined the movant's prosecution of the civil action was without substantial justification.

*Judgment* ¶ 14.[11] As in *Chaires,* the State Court awarded attorney fees and costs pursuant to a frivolous and groundless statute (*Colo.Rev.Stat.* § 13–17–102). This Court concurs with the rationale and conclusions of the *Chaires* opinion and further concludes no distinction should be made between an award of attorney fees under a separate and distinct fee statute and a statute addressing both the underlying conduct and encompassing an attorney fee provision.

### C. Reasonableness of Attorney Fee Award.

 The Smiths' Response to the Plaintiffs' Motion indirectly requests that even if this Court determines the attorney fees nondischargeable, it should nevertheless determine the fees and costs awarded unreasonable. The Court disagrees. If the Smiths believed the attorney fees and costs awarded pursuant to the State Court's Judgment were excessive, the Smiths could and should have petitioned the State Court to reconsider its Judgment or appealed the State Court's determination. Under the *Rooker–Feldman* doctrine, this Court cannot act as an appellate court to the state court or otherwise collaterally attack the state court judgment. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). For this reason the Court denies the Smiths' request to assess whether the attorney fees and costs awarded by the State Court were reasonable.

### Conclusion

For the reasons set forth above, this Court finds and orders the damages, attorney fees and costs awarded to the Plaintiffs in Case No. 02 CV 44 by the District Court, Mesa County, Colorado on August 12, 2003, *nunc pro tunc,* July 11, 2003, are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

---

11. Although the findings do not cite to the particular statute the State Court specifically relied upon when entering its award of attorney fees and costs, both parties appear to agree the law applied was Colorado's frivolous and groundless statute.