NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Case No. 17-1877

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

IN RE ZACHARY N. TROST and KIMBERLY A. TROST,

    Debtors

_____

SHERRY TROST,

    Plaintiff-Appellee,

v.

ZACHARY N. TROST and KIMBERLY A. TROST,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
May 30, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

**O P I N I O N**

BEFORE:  MOORE, COOK, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  Federal bankruptcy law allows an underwater debtor to discharge certain debts in the hope of a fresh financial start.  But there are limits on the law's generosity; not all obligations may be forgiven. One such exception is for debts that arise from causing willful and malicious injuries.  A jury found that Zachary and Kimberly Trost (collectively, "Zachary")[1] converted the property of Sherry Trost ("Sherry"), causing Sherry over

---

[1] We use Zachary as the signifier for ease of reading and because he features more prominently in this case than does Kimberly.

$100,000 in losses. Zachary says that debt should be forgiven in bankruptcy; Sherry says it cannot be, since the injury was the result of a willful and malicious injury. A bankruptcy court and appellate panel agreed with Sherry. We do too, and thus **AFFIRM**.

**I**

Sherry Trost is the widow of Fred Trost, the former owner and host of the Michigan television show Michigan Outdoors. R. 70, Joint Statement of the Case, PID 663.[2] Michigan Outdoors accumulated significant debts under Fred's management. *Id.* Because this debt made it impossible for Fred to continue the show, Sherry assumed the show's debts and also took ownership of all its property and assets. *Id.*

After Fred's death in 2007, Zachary Trost, Fred's son and Sherry's step son, offered to pay off the show's debts in exchange for the property and assets related to the show, including video editing equipment, videotapes of original episodes, and other assorted show memorabilia. *Id.*; R. 88, Order Granting in Part and Denying in Part Defendants' Motion for Judgment as a Matter of Law, PID 761-62. Sherry agreed, and gave Zachary all the property and assets of the show; Zachary, however, never paid any of the show's debts. *Id.*

So Sherry sued Zachary in June of 2009, for breach of contract, fraud, and conversion.[3] R. 17, Amended Compl., PID 84-86. A three-day jury trial ensued in February 2012, in which Sherry testified, submitted exhibits, and called others to testify—all on the subject of Sherry's ownership of the show's property, the circumstances surrounding the transfer of the property to

---

[2] All citations to the record ("R.") refer to the record in the civil conversion, breach of contract, and fraud suit between Sherry and Zachary Trost, not the proceedings in the bankruptcy court. Those readers interested in a more comprehensive (though largely irrelevant for this appeal's purposes) version of the facts are directed to the bankruptcy court decision. *In re Trost*, 510 B.R. 140 (Bankr. W.D. Mich. 2014).

[3] Certain of Sherry's claims were also brought against Zachary's wife Kimberly.

Zachary, and Zachary's refusal to return the property despite his inability to pay down the debts. Included in this evidence was an email exchange between Zachary and Sherry in which Zachary offered to purchase certain of the show's assets and where they tried to arrange for a return of the property. R. 42-2, Ex. H., PID 487-88. For his part, Zachary did not put on any evidence, and instead moved for judgment as a matter of law. R. 88, PID 756.

The jury returned a verdict for Sherry on both the breach of contract and conversion claims, awarding damages of $194,725.30 and $108,797.06, respectively. *Id*. at PID 757. The district court denied Zachary's motion for judgment as a matter of law with respect to the conversion claim, *id.* at PID 774, but granted his motion on the contract claim due to the lack of a written agreement consistent with the Uniform Commercial Code, *id.* at PID 768.

Zachary appealed the district court's conversion decision, while Sherry cross-appealed on the contract issue. *Trost v. Trost*, 525 F. App'x 335 (6th Cir. 2013). The Sixth Circuit affirmed the district court's refusal to grant judgment as a matter of law on Sherry's conversion claim, and reversed the district court's judgment and reinstated the jury verdict in favor of Sherry on the contract claim. *Id.* at 346. Only the conversion judgment is at issue in this case.

Unable to pay the conversion judgment debt, Zachary filed for Chapter 7 bankruptcy in July 2013. *In re Trost*, 510 B.R. 140, 148 (Bankr. W.D. Mich. 2014). In October 2013, Sherry filed an adversary proceeding asserting, in part, that the conversion judgment debt should be nondischargeable under 11 U.S.C. § 523(a)(6), because the debt arose from the causing of a willful and malicious injury. *Id*. The bankruptcy court granted summary judgment in favor of Sherry on her § 523(a)(6) claim. *Id*. at 153-54. Zachary appealed, and a bankruptcy appellate panel affirmed. *In re Trost*, No. 16-8024, 2017 WL 2799842, at *6 (B.A.P. 6th Cir. June 28, 2017). Zachary's appeal to this court followed.

**II**

**A.      The District Court Correctly Granted Summary Judgment in Favor of Sherry**

Summary judgment in bankruptcy proceedings, like in ordinary civil litigation, is appropriate when the evidence, taken in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007); Fed. R. Civ. P. 56(a). We review the district court's grant of summary judgment in favor of Sherry de novo. *Mazur*, 507 F.3d at 1016.

This case presents two questions: first, whether the prior federal court judgment holding Zachary liable for conversion established certain facts that he cannot relitigate in this bankruptcy proceeding; and second, if so, whether those established facts confirm that the conversion judgment debt is nondischargeable in bankruptcy. The bankruptcy court answered "yes" to both of these questions. Whether that was correct turns on the application of three distinct swaths of law: federal bankruptcy law, Michigan tort law, and federal collateral estoppel law.

We begin with federal bankruptcy law. Section 523(a)(6) of the Bankruptcy Code provides an exception to the dischargeability of debts arising from the "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6); *In re Markowitz*, 190 F.3d 455, 463 (6th Cir. 1999). "From the plain language of the statute, the judgment must be for an injury that is both willful and malicious." *In re Markowitz*, 190 F.3d at 463. A willful injury is "deliberate or intentional"; a malicious one occurs in "conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986). The Supreme Court has explained that a nondischargeable "willful and malicious injury" "generally require[s] that the actor intend the consequences of an act, not simply the act itself."

*Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (citation and internal quotation marks omitted). We have further clarified that a willful and malicious injury occurs only if the debtor (1) desires "to cause the consequences of this act" or (2) "believes that the consequences are substantially certain to result from it." *Markowitz,* 190 F.3d at 464 (citation, internal quotation marks, and brackets omitted). Therefore, the central question is whether Zachary knew that he had encroached on Sherry's property rights, thereby making his conversion willful and malicious.

Whether the debt at issue here so qualifies depends on the circumstances of the Michigan tort law judgment against Zachary. "A judgment arising from the intentional tort of conversion may give rise to a nondischargeable debt under § 523(a)(6)." *In re Hanif*, 530 B.R. 655, 670 (Bankr. E.D. Mich. 2015). But "not every tort judgment for conversion," the Supreme Court has cautioned, "is exempt from discharge." *Geiger*, 523 U.S. at 64 (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934)). Michigan defines common-law conversion as the wrongful exertion of domain over an owner's personal property in a manner that is inconsistent with the owner's rights. *See Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 606 (Mich. 1992). In regard to scienter, a converter's actions are generally willful, unless the converter dos not know about the owner's interest. *Id.* Accordingly, we must "consider the circumstances surrounding the conversion to determine if it falls within the scope of [the § 523(a)(6)] exception." *In re Hanif*, 530 B.R. at 670.

That brings us, finally, to federal collateral estoppel law. Collateral estoppel, sometimes called issue preclusion, "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Markowitz*, 190 F.3d at 461. Prior tort judgments can

serve as a basis for collateral estoppel in nondischargeability proceedings. *Cf. Grogan v. Garner*, 498 U.S. 279, 285 (1991). A party is barred from relitigating an issue already decided when:

> (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005) (citing *Santana–Albarran v. Ashcroft*, 393 F.3d 699, 704 (6th Cir. 2005)). To determine whether these five elements are met, bankruptcy courts "look at the entire record of the [prior] proceeding, not just the judgment." *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981).[4] We do the same on appellate review.

Applying this mix of law to the facts here shows that the bankruptcy court got it right on both questions presented in this appeal. The bankruptcy court rightly invoked collateral estoppel to bar Zachary from relitigating certain factual issues determined in the conversion suit. And it correctly concluded that those prior factual determinations showed Zachary caused a willful and malicious injury, rendering his debt nondischargeable under bankruptcy law. We start with the collateral estoppel analysis.

### 1. Collateral Estoppel

#### a. Identity of the Issues

The first (and closest) question is whether the issue litigated in the Michigan conversion case was the same as in the bankruptcy dischargeability proceeding. We hold that it was. As the bankruptcy court noted at the outset of its analysis, despite the "technical distinction" between conversion's intentional act requirement and § 523(a)(6)'s intentional injury requirement,

---

[4] Mutuality of the parties is uncontested and thus excluded from the analysis.

"collateral estoppel precludes religitation of *factual* issues that were actually and necessarily determined in the prior action." *In re Trost*, 510 B.R. 140, 152 (Bankr. W.D. Mich. 2014) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). And the record in the conversion case, the bankruptcy court correctly determined, resolved the key factual question at issue in the § 523(a)(6) dispute—namely, whether Zachary knew that Sherry owned the property.

Recall that under § 523(a)(6), a willful injury is "deliberate or intentional"; a malicious one occurs in "conscious disregard of one's duties or without just cause or excuse." *Wheeler*, 783 F.2d at 615 615. Thus, Zachary's knowledge of Sherry's ownership interest is critical to Sherry's § 523(a)(6) claim. But Zachary's intent, despite the differing *legal* standards for common law conversion and bankruptcy dischargeability, was also a principal *factual* issue in his conversion case. Indeed, the "evidence in the District Court action . . . conclusively established that Zachary and Kim Trost were aware that Sherry Trost owned the assets." *In re Trost*, 510 B.R. at 152. This evidence included testimony by several witnesses that Zachary acquired the property in exchange for his promise to "pay off the debts" Sherry incurred from her late husband, and several emails from Zachary, after he failed to pay off those debts, offering either to return the property or purchase it. *Id.* Surveying the record, the bankruptcy court said it showed "'everyone involved'— including Zachary and Kim—'believed Sherry owned the video library and memorabilia.'" *Id.* (quoting R. 88, District Court Order Granting in Part and Denying in Part Defendants' Motion for Judgment as a Matter of Law, PID 773). And yet despite his "awareness of [Sherry's] ownership interest in the property and her repeated demands for its return," Zachary and Kim clung to the property. *Id.* The factual issue—whether Zachary knew Sherry owned the property—is therefore identical in each action.

Zachary creatively, yet unsuccessfully, tries to avoid this conclusion. He argues that the only tort claim that involved sufficiently identical issues for collateral estoppel was fraud; and furthermore, that since he was absolved on that score, he has already negated any finding that he intended to cause Sherry's injury. Appellants' Br. at 21-22 ("Indeed, a finding of 'no fraud' simply cannot logically result in a conclusion that there is no genuine issue of material fact that a person '*intended* to cause actual damage through willful and malicious behavior.'"). This is wrong, for two reasons. First, to qualify as a nondischargeable debt under § 523(a)(6), an injury must only be "willful and malicious"; it need not constitute fraud. Indeed, Congress created a fraud-specific exception to discharge in § 523(a)(2)(A), which bars discharge for any debts arising from "false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). While a fraudulent action may often produce a nondischargable "willful and malicious injury," the universe of wrongful action that may cause such injuries is much broader than common-law fraud. To wit, we have recognized that "[d]ebts arising out of [various] types of misconduct satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises." *In re Best*, 109 F. App'x 1, 5 (6th Cir. 2004) (collecting cases). And second, Zachary overlooks—as he did in making the same argument before the bankruptcy appellate panel—that the burden of proof for fraud claims under Michigan law, clear and convincing evidence, is substantially more severe than it is for conversion, preponderance of the evidence. *Bitkowski v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 866 F.2d 821, 823 (6th Cir. 1987). That the record did not yield clear and convincing evidence of fraud says nothing about whether the record reveals facts showing that Zachary acted willfully and maliciously in converting Sherry's property.

The first element of collateral estoppel is therefore satisfied.

### b.    Actually Litigated

The factual issue of whether Zachary took property that he knew belonged to Sherry was actually litigated and decided in the district court.  The bankruptcy court found "no question whatsoever that the Plaintiff's conversion claim, and the factual issues related thereto, were actually litigated," referencing the jury's conversion verdict, the district court order upholding that verdict, and the Sixth Circuit's affirmance.  *In re Trost*, 510 B.R. at 151.  We agree.  This case's litigation history is robust, and much of the litigation has centered on the dispute of who owned the memorabilia, whether Zachary knew who owned the property, and whether Zachary held onto the property despite that knowledge and Sherry's repeated requests for its return.  *Id.* at 152 (citing district court and Sixth Circuit review of the factual record).  Therefore, the factual question of whether Zachary knowingly took Sherry's property has been litigated.

### c.    Necessary to the Judgment

At first blush, there may appear some question whether the evidence about Zachary's knowledge of ownership was *necessary* to the judgment.  After all, as a general matter, one can be liable for conversion under Michigan law on showing only an intent to *act*, without an accompanying intent to *injure*.  But when we "look at the entire record of the [conversion] proceeding, not just the judgment," *Spilman*, 656 F.2d at 228, it is evident the judgment against Zachary depended on finding much more.  The jury instructions are especially revealing here.  *See Wheeler*, 783 F.2d at 614 (considering jury instructions to determine what the verdict required the jury to find).  In the civil trial, the jury was instructed that it could find Zachary liable only if Sherry proved by a preponderance of the evidence that Zachary obtained her property through deceit or false representations.  *In re Trost*, 510 B.R. 140 (citing R. 72, Proposed Jury Instructions, PID 699).  Implicit in the jury's verdict against Zachary, then, is a finding that Zachary *knew*

Sherry owned the property and that he acted deceitfully to obtain it. Without the testimony and other evidence demonstrating that Zachary knew Sherry was the rightful owner of the memorabilia, that he obtained it by promising to help her pay her late husband's debts, and that he refused to return it after reneging on that promise, Zachary very well could have escaped liability. He cannot argue, then, that the factual issue of his knowledge was not necessary to the conversion judgment against him.

### d.      Full and Fair Opportunity to Litigate

This last requirement is largely addressed by the analysis in the two preceding sections. An issue that was actually litigated and was necessary to the judgment will almost always present parties with a full and fair opportunity to litigate. Zachary certainly had such an opportunity in his conversion case—though he for some reason chose not to take it. *In re Trost*, 510 B.R. at 145. The bankruptcy court's analysis here is instructive:

> To the extent the Defendants may have believed they had an ownership interest in the videotapes and memorabilia that was superior to the Plaintiff's interest, or were otherwise "unaware" of the Plaintiff's interest in the property, *they had a full and fair opportunity to present evidence of that belief in the District Court action. They did not do so, despite the fact that the parties' competing interests in the assets were directly at issue in the conversion claim.* Instead, they stipulated before trial that Sherry Trost and JoAnn Cribley took "ownership" of Fred Trost's television show, and all of its assets and liabilities. When Sherry Trost and JoAnn Cribley offered more detailed testimony at trial about how Sherry Trost acquired the tapes and other assets from ZNT, *the Defendants offered no evidence to contradict that testimony. If they were truly not aware that Sherry Trost owned the property, the Defendants offered no explanation why Zachary Trost offered to return or purchase the property in his email correspondence.* Likewise, the Defendants offered not one whiff of "just cause or excuse" to explain why they failed to return the property to the Plaintiff, even after her repeated demands culminated in the filing of the District Court action, a three day jury trial, and a subsequent appeal.

*Id.* at 153 (emphasis added). Zachary had the chance to litigate the issue we now hold he is precluded from relitigating—and that is all issue preclusion requires. It does not matter that Zachary chose not to take that chance.

All five elements required for the application of collateral estoppel are satisfied. The bankruptcy court therefore properly held that the conversion case precluded Zachary from contesting whether he knew Sherry owned the property.

### 2. Whether the factual record in the prior proceeding rendered Zachary's debt nondischargeable

Unable to relitigate scienter, Zachary must show that the facts established in the conversion case stop short of showing willfulness and malice as required by § 523(a)(6). He cannot do so. "To the contrary, the factual findings that were necessary to the prior determination that the Defendants converted the Plaintiff's property convincingly establish that the Defendants' actions were also willful and malicious under § 523(a)(6)." *In re Trost*, 510 B.R. at 152. That is true under either *Wheeler* or *Markowitz*, our prior cases explicating the standard for willful and malicious injuries. The evidence shows that Zachary's actions were "willful" in that he knew Sherry owned the property when he did not return it, and that they were malicious in that he acted in clear disregard for Sherry's superior rights. *See Wheeler*, 783 F.2d at 615. And if the record is equivocal on whether Zachary *wanted* "to cause the consequences of [his] act"—Sherry losing her property—it is clear that he knew "those consequences [were] substantially certain to result from it." *Markowitz,* 190 F.3d at 464.

The same kinds of facts that emerged in Zachary's conversion case have supported a willful and malicious finding in other bankruptcy proceedings. In *In re Hanif*, the plaintiff's conversion suit alleged that the defendant's actions excluding plaintiff from the business were "deliberate and on-going over a period of time." 530 B.R. at 670. The court, taking those allegations as true because the defendant defaulted, said they demonstrated willful and malicious intent: "That pattern of conduct could lead to only one result—[p]laintiff's exclusion from the business. That result was entirely foreseeable and substantially certain to occur." *Id.* So too here. Zachary's pattern of

conduct—taking Sherry's property by promising to help her pay debts, failing to do so, and yet repeatedly refusing to return the property—could lead only to Sherry being wrongfully deprived of her property. Consider, also, *In re Cox*, 243 B.R. 713 (Bankr. N.D. Ill. 2000). Because the facts in the conversion case there revealed the defendant "was aware of Fidelity's interest and knew that selling of the car parts was substantially certain to cause an injury to that interest," the court said he acted both willfully and maliciously. *Id.* at 720. The facts show much the same in this case: Zachary knew Sherry owned the property—indeed he implicitly acknowledged as much by alternately promising to return and offering to buy it—so he at the very least knew that he was substantially certain to injure Sherry by refusing to return her property.

Contrast further clarifies our conclusion. This case is easily distinguished from prior ones where tort judgments failed to render a debt nondischargeable. In *In re Lowery*, for example, the record in the debtor's conversion case revealed "no indication" that the court "actually considered and determined Lowery's subjective intent to cause injury or the probability of injury." 440 B.R. 914, 928 (Bankr. N.D. Ga. 2010). That meant Lowery's tort case did not address the issue presented by § 523(a)(6)'s "willful and malicious" requirement. *Id.* Similarly, in *In re Longley*, the court examining an underlying conversion judgment could find no "evidence that Longley intended to injure [the creditor] or its lien interest," even though ample evidence showed he intentionally transferred a vehicle he did not own. 235 B.R. 651, 657 (B.A.P. 10th Cir. 1999). As such, the record in the conversion case against Longley could not answer the question whether Longley willfully and maliciously caused injury. *Id.* In stark contrast to both *Lowery* and *Longley*, the record here is replete with evidence regarding Zachary's subjective intent. The facts show that Zachary knew he was not the rightful owner of the memorabilia, and that he nevertheless held onto it despite Sherry's repeated demands for its return. *In re Trost*, 510 B.R. at 152.

In light of all this, we agree with the bankruptcy court that the "factual record" in the conversion case "mandates the factual and legal conclusion that the . . . conversion of [Sherry's] property" was both willful and malicious. *Id.* at 153. As there is no genuine issue of material fact regarding whether Zachary willfully or maliciously caused Sherry's injury, the conversion judgment debt is nondischargeable and summary judgment in favor of Sherry was proper.[5]

### III

For the fifth time and before a fifth court, Zachary argues that he did not intentionally cause Sherry Trost's injury when he deprived her of property valued at over $100,000. The first court found otherwise, the second affirmed, and every one since has rejected relitigation of this question. We hold the same today. Therefore, the bankruptcy court's grant of summary judgment in favor of Sherry is **AFFIRMED.**

---

[5] Zachary's remaining argument that, even if he caused Sherry an injury, the debt she complains of in this case is not related to that injury, is a red herring. Zachary says that "the injury complained-of by [Sherry] (the taxes and debts from the television show) already existed at the time [Zachary] breached their promise to pay the debts purportedly in exchange for the memorabilia." Appellants' Br. at 17; *see also id.* at 19 (suggesting Sherry's only injury was "the taxes and the debts that already existed"). Not so. The jury determined the value of the property converted was $108,797.06. While the jury based that determination on the value of the debts that Zachary agreed to pay in exchange for Sherry's property, that does not mean those debts constituted Sherry's injury. *See Trost*, 525 F. App'x at 343. The *injury* remains the loss of property wrought by Zachary's conversion; that doesn't change simply because the *value* of that property— and thus the damages awarded for Sherry's injury—was assessed by reference to Sherry's debts.